Brian E. Pastuszenski (*pro hac vice*)
bpastuszenski@goodwinprocter.com
Inez Friedman-Boyce (*pro hac vice* pending)
ifriedmanboyce@goodwinprocter.com
Brian C. Devine (SBN 222240)
bdevine@goodwinprocter.com
**GOODWIN PROCTER LLP**
Exchange Place
Boston, MA 02109-2802
Tel.: 617-570-1000
Fax: 617-570-1231

Lloyd Winawer (SBN 157823)
lwinawer@goodwinprocter.com
**GOODWIN PROCTER LLP**
601 South Figueroa Street, 41st Floor
Los Angeles, California 90017
Tel.: 213-426-2500
Fax: 213-623-1673

*Attorneys for Defendants*
Countrywide Financial Corporation,
Countrywide Home Loans, Inc., CWALT,
Inc., CWMBS, Inc., Countrywide Capital
Markets, Countrywide Securities
Corporation, and N. Joshua Adler

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN re COUNTRYWIDE FINANCIAL CORP. MORTGAGE-BACKED SECURITIES LITIGATION CASES | Case No.  11-ML-02265-MRP (MANx)<br><br>**DEFENDANT N. JOSHUA ADLER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS TO DISMISS**<br><br>Courtroom:  12<br>Judge:      Hon. Mariana R. Pfaelzer |
| THE WESTERN AND SOUTHERN LIFE INSURANCE COMPANY, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, *et al.*,<br><br>        Defendants. | Case No. 11-CV-7166-MRP (MANx) |

1

2  NATIONAL INTEGRITY LIFE
   INSURANCE COMPANY,

3          Plaintiff,

4      v.                                    Case No.  11-CV-09889-MRP (MANx)

5  COUNTRYWIDE FINANCIAL
   CORPORATION, et al.,

6
           Defendants.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................... 1

ARGUMENT .................................................................................................. 2

I.   Ohio's Long-Arm Statute Does Not Confer Jurisdiction Over Mr. Adler ..... 4

II.  New York's Statutes Do Not Confer Personal Jurisdiction ........................... 6

     A.   Mr. Adler Is Not Subject To Personal Jurisdiction Under CPLR 301 ............................................................................... 6

     B.   Mr. Adler Is Not Subject To Personal Jurisdiction Under CPLR 302, New York's Long-Arm Statute ........................... 8

          1.   CPLR 302(a)(1) Does Not Apply To Mr. Adler ........................ 9

          2.   CPLR 302(a)(3) Does Not Apply To Mr. Adler ........................ 9

III.  Constitutional Due Process Does Not Authorize Jurisdiction In Either Ohio Or New York ............................................................ 12

     A.   Mr. Adler's Contacts Must Be Analyzed Separately From Contacts Of Countrywide Or Any Other Defendant ........................... 13

     B.   Mr. Adler Is Not Subject To General Jurisdiction .............................. 14

     C.   Mr. Adler Is Not Subject To Specific Jurisdiction .............................. 15

CONCLUSION ............................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                   **PAGE**

*Alsop v. Carolina Custom Products, Inc.*,
   2007 WL 2441025 (C.D. Cal. Jun. 29, 2007) ................................... 16

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*,
   551 F.2d 784 (9th Cir. 1977) ............................................................... 3

*Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano County*,
   480 U.S. 102 (1987) ........................................................................... 13

*Auto Channel, Inc. v. Speedvision Network, LLC*,
   995 F. Supp. 761 (W.D. Ky. 1997) ..................................................... 1

*Bensusan Rest. Corp. v. King*,
   126 F.3d 25 (2nd Cir. 1997).  .............................................................. 8

*Bill Rea Ins. Assoc., Inc. v. Nat'l Fin. Servs. Corp.*,
   860 F. Supp. 1181 (W.D. Tex. 1994) .................................................. 1

*Brown v. Gen. Steel Domestic Sales, LLC*,
   2008 WL 2128057 (C.D. Cal. May 19, 2008)..................................... 14

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ........................................................................... 13

*Busch v. Serv. Plastics, Inc.*,
   261 F. Supp. 136 (N.D. Ohio 1966) .................................................... 5

*Calder v. Jones*,
   465 U.S. 783 (1984) ............................................................................. 3

*Carte v. Parlaff*,
   152 A.D.2d 615 (2d Dep't 1989).......................................................... 10

*Cortlandt Racquet Club, Inc. v. Oy Saunatec, Ltd.*,
   978 F. Supp. 520 (S.D.N.Y. 1997) ..................................................... 12

*Costaras v. NBC Universal, Inc.*,
   409 F. Supp. 2d 897 (N.D. Ohio 2005) ............................................... 4

i

*D'Addario v. Geller*,
   264 F. Supp. 2d 367 (E.D. Va. 2003) .................................................................. 1

*Data Disc, Inc. v. Systems Tech. Assoc., Inc.*,
   557 F.2d 1280 (9th Cir. 1977) ............................................................................. 3

*Diebold, Inc. v. Financial Services, Inc.*,
   104 F. Supp. 2d 758 (N.D. Ohio 2000) ............................................................... 6

*EAC Sys., Inc. v. Chevie*,
   154 A.D.2d 813 (3d Dep't 1989) .......................................................................... 9

*Fantis Foods v. Standard Importing Co.*,
   49 N.Y.2d 317 (N.Y. 1980) ................................................................................ 12

*Franklin Productions, Inc. v. Gen. Nutrition Corp.*,
   2007 WL 2462665 (S.D. Ohio Aug. 27, 2007) ................................................... 6

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
   284 F.3d 1114 (9th Cir. 2002) ........................................................................... 17

*Goldstein v. Christiansen*,
   638 N.E.2d 541 (Ohio 1994) ............................................................................. 12

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003) ............................................................................. 3

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) ............................................................................... 13, 14, 15

*Hoover Co. v. Robeson Indus. Corp.*,
   904 F. Supp. 671 (N.D. Ohio 1995) .................................................................... 5

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   2005 WL 2988715 (N.D. Cal. Nov. 7, 2005) ........................................... 3, 13, 17

*In re Nilsa B.B.*,
   84 A.2d 295 (2d Dep't 1981) ............................................................................... 8

*Ingraham v. Carroll*,
   90 N.Y.2d 592 (1997) ........................................................................... 10, 11, 12

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ..................................................................................... 13, 17

*Jacobs v. Felix Bloch Erben Verlag Fur Buhne Film Und Funk KG*,
   160 F.Supp.2d 722 (S.D.N.Y. 2001) ...................................................................7

*Karabu Corp. v. Gitner*,
   16 F. Supp. 2d 319 (S.D.N.Y. 1998) ..........................................................8, 9, 13

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 (1984) ...................................................................................14

*Kimco Exch. Place Corp. v. Thomas Benz, Inc.*,
   824 N.Y.S.2d 353 (N.Y. App. Div. 2006) .............................................................8

*Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*,
   77 N.Y.2d 28 (N.Y. 1990) ..............................................................................8

*Laufer v. Hauge*,
   140 A.D.2d 671 (2d Dep't 1988).......................................................................7

*Laufer v. Ostrow*,
   55 N.Y.2d 305 (1982)..............................................................................6, 8

*Malone v. Nuber*,
   2009 WL 481285 (W.D. Wash. Feb. 23, 2009) ....................................................1

*McGowan v. Smith*,
   419 N.E.2d 321 (N.Y. 1981) ...........................................................................9

*McIntyre v. Nicastro*
   131 S.Ct. 2780, 2789 (2011) ...................................................................16, 18

*McKone v. State Tax Comm'n of N.Y.*,
   490 N.Y.S.2d 628 (N.Y. App. Div. 1985)..............................................................7

*McNutt v. Gen. Motors Acceptance Corp.*,
   298 U.S. 178 (1936) ....................................................................................3

*Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*,
   425 F. Supp. 2d 402 (S.D.N.Y. 2006) ..............................................................4, 9

*Morley v. Cohen*,
   610 F. Supp. 798 (D. Md. 1985)........................................................................1

iii

*Pebble Beach Co. v. Caddy*,
 453 F.3d 1151 (9th Cir.) ...................................................................... 16

*Schwarzenegger v. Fred Martin Motor Co.*,
 374 F.3d 797 (9th Cir. 2004) ........................................................*passim*

*SEC v. Ross*,
 504 F.3d 1130 (9th Cir. 2007) ............................................................ 13

*Swartz v. KPMG LLP*,
 476 F.3d 756 (9th Cir. 2007) .............................................................. 16

*The Andersons, Inc. v. Demrex Indus. Services, Group, LLC*,
 590 F. Supp. 2d 963 (N.D. Ohio 2008) ................................................ 5

*U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.*,
 624 N.E. 2d 1048 (Ohio 1994) ......................................................... 4, 5

*United Bank of Kuwait, PLC v. James M. Bridges, Ltd.*,
 766 F. Supp. 113 (S.D.N.Y. 1991) ..........................................10-11, 12

*Uzan v. Telsim Mobil Telekomunikayson Hizmetleri A.S.*,
 856 N.Y.S.2d 625 (N.Y. App. Div. 2008) ............................................ 7

*Viacom Int'l, Inc. v. Melvin Simon Productions, Inc.*,
 774 F. Supp. 858 (S.D.N.Y. 2001) ...................................................... 8

**STATUTES**

15 U.S.C. § 22 ...................................................................................... 1

15 U.S.C. § 78aa .....................................................................................

28 U.S.C. § 1367 ................................................................................... 4

C.P.L.R. § 301 ..............................................................................*passim*

C.P.L.R. § 302 ..............................................................................*passim*

OHIO REV. CODE § 2307.382 .......................................................... 3, 4, 5

Securities Act of 1933 ..................................................................... 1, 17

Securities Exchange Act of 1934 .......................................................... 2

**INTRODUCTION**

Defendant N. Joshua Adler ("Mr. Adler") moves to dismiss the state law claims asserted against him—specifically, five claims for alleged violations of the Ohio Securities Act ("OSA")—by the Plaintiffs in the substantively identical *Western & Southern* and *National Integrity* actions for lack of personal jurisdiction. As discussed in detail in the Countrywide Defendants' Consolidated Memorandum of Points and Authorities in Support of Their Motions to Dismiss ("CW Mem."), the one federal claim asserted against Mr. Adler in these two actions, a Section 11 claim under the Securities Act of 1933 (the "1933 Act"), is time-barred and must be dismissed. *See* CW Mem., at 27-29, 29 n.34, 45-46.   Accordingly, the nationwide service of process provision in the 1933 Act cannot provide the basis of personal jurisdiction over Mr. Adler with respect to the remaining OSA claims asserted against him. *See Malone v. Nuber*, 2009 WL 481285, No. C07–2046RSL, at *1 (W.D. Wash. Feb. 23, 2009) ("[O]nce the federal claims were dismissed, they can no longer provide a basis for asserting pendent personal jurisdiction over defendants for the state law claims."); *accord Morley v. Cohen*, 610 F. Supp. 798, 823 (D. Md. 1985) (same).[1]   Western & Southern and National Integrity, therefore, have the burden of establishing an independent basis for personal jurisdiction over Mr. Adler under the applicable standards in Ohio and New York, the forum states in which these two actions were originally filed.

---

[1] *See also D'Addario v. Geller*, 264 F. Supp. 2d 367, 387-88 (E.D. Va. 2003) (where personal jurisdiction is based on a federal statutory nationwide service provision, "if the court were to later determine that the federal claim(s) should be dismissed against a defendant, the state claims against that defendant would also have to be dismissed, unless another basis for asserting personal jurisdiction exists"); *Auto Channel, Inc. v. Speedvision Network, LLC*, 995 F. Supp. 761, 762 (W.D. Ky. 1997) ("Since all antitrust claims against Speedvision and Continental have been dismissed, this Court no longer has personal jurisdiction over the parties pursuant to the nationwide service of process provision set forth in 15 U.S.C. § 22."); *Bill Rea Ins. Assocs., Inc. v. Nat'l Fin. Servs. Corp.*, 860 F. Supp. 1181, 1184 (W.D. Tex. 1994) ("Plaintiffs dropped their cause of action against National under the Federal Securities Act.  Thus, the nationwide service of process provisions of the Securities Act were no longer applicable and traditional concepts of personal jurisdiction over the remaining state law claims were brought into play.").

Western & Southern and National Integrity (together, "Plaintiffs") fail to meet this burden.  They nowhere allege in their respective complaints that Mr. Adler has ever had any contact whatsoever in Ohio or New York.  This is not surprising, given that Mr. Adler has had no contacts—of any kind—with Ohio, and virtually no contacts (and no relevant contacts) with New York.  *See* Declaration of N. Joshua Adler, dated December 7, 2011, attached hereto as Exhibit A ("Adler Decl.") ¶¶ 3-26.  Indeed, Mr. Adler, a California resident, has never owned real estate or any other property in Ohio or New York, has never been employed in Ohio or New York, and has never personally transacted business in either Ohio or New York.  *Id.* ¶¶ 2, 4, 6, 9, 14, 17, 18, 21.  In fact, Mr. Adler has never even set foot in Ohio.  *Id.* ¶ 16.  The *sole* allegation contained in these two complaints that even references Mr. Adler specifically is that he signed registration statements for certain MBS allegedly purchased by Plaintiffs.  *W&S* AC ¶ 36; *NI* Compl. ¶ 36.  This one allegation, however, is insufficient to establish personal jurisdiction, as it does not establish that Mr. Adler had any contact with Western & Southern or National Integrity, that he specifically targeted these entities, or that he targeted the states of Ohio or New York in any way.  Because Western & Southern and National Integrity fail to allege any facts sufficient to confer personal jurisdiction upon Mr. Adler in Ohio or New York, the OSA claims against Mr. Adler must be dismissed.[2]

## **ARGUMENT**

Western & Southern originally filed its complaint in the Southern District of Ohio on April 27, 2011.  National Integrity was a plaintiff in the original *Western &*

---

[2] In *American Fidelity Assurance Co. v. Countrywide Financial Corp., et al.*, No. 11-CV-07167 ("*AFAC*"), the sole alleged basis for personal jurisdiction over Mr. Adler is the nationwide service of process provision of the Securities Exchange Act of 1934.  15 U.S.C. § 78aa.  However, as in *Western & Southern* and *National Integrity*, AFAC's federal claims against Mr. Adler are time-barred and must be dismissed (*see* CW Mem., at 22 n.27), thereby eliminating the sole alleged basis for personal jurisdiction him.  Because there are no state law claims asserted against Mr. Adler in *AFAC*, a separate jurisdictional analysis under Oklahoma's long-arm statute and the Fourteenth Amendment is not necessary for that case.

1    *Southern* action, but recently dropped out of that action and filed a separate—but

2    substantively identical—complaint in the Southern District of New York on

3    November 9, 2011.  These two cases were both transferred to this Court as part of

4    the *Countrywide MBS MDL* for pre-trial purposes.  *See W&S* AC ¶ 45.  "In MDL

5    actions such as this one, the court is entitled to exercise personal jurisdiction over

6    each defendant only to the same degree that the original transferor court could

7    have."  *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2005 WL

8    2988715, at *2 (N.D. Cal. Nov. 7, 2005) (citing *Maricopa County v. Am. Petrofina,*

9    *Inc.*, 322 F. Supp. 467, 469 (N.D. Cal. 1971)).  Accordingly, if the original forum

10   courts in Ohio and New York lacked personal jurisdiction over Mr. Adler, these

11   cases must be dismissed by this Court.

12       Plaintiffs bear the burden to prove the existence of personal jurisdiction exists

13   over Mr. Adler.  *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182

14   (1936); *Harris Rutsky & Co. Ins. Servs.*, *Inc. v. Bell & Clements Ltd.*, 328 F.3d

15   1122, 1128-29 (9th Cir. 2003).  They "cannot 'simply rest on the bare allegations of

16   [their] complaint[s]'" to fulfill this burden.  *Schwarzenegger v. Fred Martin Motor*

17   *Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l,*

18   *Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).  Instead, plaintiffs must allege a *factual*

19   basis for the exercise of personal jurisdiction over *each* individual defendant.

20   *Calder v. Jones*, 465 U.S. 783, 790 (1984).  Moreover, the Court need not assume

21   the truth of allegations in a pleading that are contradicted by sworn affidavit.  *Data*

22   *Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).

23       The applicable standards in Ohio and New York to determine whether a court

24   has jurisdiction over a non-resident defendant are similar.  In Ohio, this

25   determination involves a two-step process:  (1) "whether the state's 'long-arm'

26   statute [Ohio Rev. Code § 2307.382] and the applicable civil rule [Civ. R. 4.3]

27   confer personal jurisdiction and, if so;" (2) "whether granting jurisdiction would

28   deprive the [non-resident] defendant of the right to due process of law under the

DEFENDANT N. JOSHUA ADLER'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS TO DISMISS

1  Fourteenth Amendment to the United States Constitution."  *U.S. Sprint Commc'ns*

2  *Co. Ltd. P'ship v. Mr. K's Foods, Inc.*, 624 N.E. 2d 1048, 1051 (Ohio 1994); *see*

3  *also Costaras v. NBC Universal, Inc.*, 409 F. Supp. 2d 897, 902 (N.D. Ohio 2005).

4  Likewise, New York employs a similar two-part analysis:  (1) "the court must

5  determine whether jurisdiction exists under the law of the forum state, here, New

6  York" and (2) "the court must determine whether the exercise of jurisdiction under

7  state law satisfies federal due process requirements."  *Merck & Co., Inc. v. Mediplan*

8  *Health Consulting, Inc.*, 425 F. Supp. 2d 402, 419 (S.D.N.Y. 2006).[3]  Western &

9  Southern and National Integrity have not, and cannot, meet their respective burden

10  of establishing personal jurisdiction as to Mr. Adler under either state's test.  They

11  also have not established that the exercise of personal jurisdiction as to Mr. Adler

12  would satisfy the federal due process requirements.

13  ## I.  <u>Ohio's Long-Arm Statute Does Not Confer Jurisdiction Over Mr. Adler.</u>

14  Ohio's long-arm statute specifically enumerates the circumstances in which

15  personal jurisdiction attaches to a non-resident defendant.  *See* OHIO REV. CODE

16  § 2307.382.[4]  Western & Southern alleges none of these statutory bases for

17
─────────────────────

18  [3] Neither Western & Southern nor National Integrity alleges that Mr. Adler is subject to personal jurisdiction under the Ohio or New York long-arm statutes.

19  Rather, they both allege supplemental jurisdiction exists over their state law claims under 28 U.S.C. § 1367.  *See W&S* AC ¶ 47; *NI* Compl. ¶ 46.

20  [4] Ohio's long-arm statute authorizes jurisdiction under the following expressly enumerated circumstances:  "(1) Transacting any business in this state;

21  (2) Contracting to supply services or goods in this state; (3) Causing tortious injury by an act or omission in this state; (4) Causing tortious injury in this state by an act

22  or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods

23  used or consumed or services rendered in this state; (5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of

24  goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly

25  does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in

26  this state; (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably

27  have expected that some person would be injured thereby in this state; (7) Causing tortious injury to any person by a criminal act, any element of which takes place in

28  this state, which he commits or in the commission of which he is guilty of complicity; (8) Having an interest in, using, or possessing real property in this state;

4

1  jurisdiction over Mr. Adler in Ohio.  For example, Western & Southern does not

2  allege that Mr. Adler personally transacted any business in Ohio or contracted to

3  supply goods in Ohio.[5]  Nor does Western & Southern allege that Mr. Adler acted

4  with the specific purpose of injuring Western & Southern in Ohio, that he engaged

5  in any persistent course of conduct directed at Ohio, or that he personally derived

6  substantial revenue from goods used or services rendered in Ohio.[6]  Indeed, Western

7  & Southern alleges no contact by Mr. Adler with Ohio at all, because there was

8  none.  In fact, Mr. Adler has never even set foot in the state of Ohio.  Adler Decl. ¶

9  16.  He does not own property in Ohio, and never has.  *Id.* ¶ 21.  Nor does he pay

10  taxes in Ohio.  *Id*. ¶ 26.  He has not ever engaged personally in any business, held a

11  business license, or maintained a bank account or telephone number in Ohio.  *Id.*

12  ¶¶ 17, 18, 22-24.  Under these circumstances, the *Western & Southern* complaint

13  fails the personal jurisdiction test of Ohio's long-arm statute.  *Hoover Co. v.*

14  *Robeson Indus. Corp.*, 904 F. Supp. 671, 674 (N.D. Ohio 1995) ("The nonresident

15  defendant must do some act or consummate some transaction within the forum.").

16         Moreover, to the extent that Western & Southern attempts to manufacture

17  personal jurisdiction solely on the basis of actions performed by Mr. Adler in his

18  corporate capacity, this is barred by the fiduciary shield doctrine.  Under Ohio law,

19  the "fiduciary shield" doctrine bars jurisdiction over corporate officers based solely

20

21  or (9) Contracting to insure any person, property, or risk located within this state at
    the time of contracting."  OHIO REV. CODE § 2307.382.

22  [5] In order to establish that a non-resident is transacting business in Ohio, the

23  "nonresident's ties must create a substantial connection with the forum state."  *U.S.*
    *Sprint Commc'ns*, 624 N.E.2d 1048, 1052 (Ohio 1994) (internal quotation omitted);

24  *The Andersons, Inc. v. Demrex Indus. Servs., Group, LLC*, 590 F. Supp. 2d 963, 967
    (N.D. Ohio 2008) ("By initiating business negotiations, negotiating and executing a

25  contract with an Ohio business with ongoing responsibilities, [defendant] 'transacted
    business' in Ohio pursuant to the Ohio long-arm statute.").

26  [6] *See Busch v. Serv. Plastics, Inc.*, 261 F. Supp. 136, 141 (N.D. Ohio 1966) (noting
    that "a persistent course of conduct contemplates a quality of contacts in Ohio

27  different from those involved in a regular doing of business in Ohio" and proof
    might involve "showing that the nonresident or foreign corporation continuously

28  and not sporadically relied on and benefited from" the course of conduct).

DEFENDANT N. JOSHUA ADLER'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS TO DISMISS

1    on acts carried out in their normal corporate capacities. *See Franklin Prods., Inc. v.*

2    *Gen. Nutrition Corp.*, No. 2:05-cv-1061, 2007 WL 2462665, at * 3 (S.D. Ohio Aug.

3    27, 2007) ("The fiduciary shield doctrine generally prevents the exercise of personal

4    jurisdiction over a corporate officer whenever an out-of-state officer's contacts with

5    the forum state occur by virtue of his or her acts as a fiduciary.") (citation omitted).

6    *See also W&S* AC ¶ 44 (alleged conduct of officers was committed "while those

7    individuals were acting within the actual or implied scope of their [corporate]

8    authority").[7]

9    **II.**    **New York's Statutes Do Not Confer Personal Jurisdiction.**

10         New York's statutory scheme establishes two ways in which personal

11    jurisdiction may be established over an individual:  N.Y. C.P.L.R. § 301 ("CPLR

12    301") governs general jurisdiction, and N.Y. C.P.L.R. 302 ("CPLR 302") governs

13    specific jurisdiction.  National Integrity has not demonstrated personal jurisdiction

14    over Mr. Adler under either statute.

15         **A.**    **Mr. Adler Is Not Subject To Personal Jurisdiction Under CPLR 301.**

16         CPLR 301 permits the exercise of personal jurisdiction over New York

17    domiciliaries and companies "doing business" in New York.  *See Laufer v. Ostrow*,

18    434 N.E.2d 692 694 (N.Y. 1982).[8]  Here, National Integrity does not allege that

19    either of these factors applies to Mr. Adler.  Nor can it, as explained below.

20    Accordingly, there can be no personal jurisdiction over Mr. Adler pursuant to CPLR

21    301.

22         First, whether a person is a New York domiciliary for the purpose of CPLR

23

24    [7] The only exception to the fiduciary shield doctrine applies where a plaintiff establishes both that "(1) a non-resident defendant personally involves himself in transactions which give rise to the cause of action *and* (2) the non-resident defendant was physically present in the state."  *Diebold, Inc. v. Firstcard Fin. Servs, Inc.*, 104 F. Supp. 2d 758, 761 (N.D. Ohio 2000) (emphasis added).  Because Mr. Adler has never set foot in the state of Ohio (Adler Decl. ¶ 16), this exception does not apply.  *See id* (dismissing claim for lack of personal jurisdiction based on fiduciary shield doctrine where defendant was never physically present in Ohio).

25

26

27

28    [8] Specifically, CPLR 301 provides that a "court may exercise such jurisdiction over persons . . . as might have been exercised heretofore."

DEFENDANT N. JOSHUA ADLER'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS TO DISMISS

301 is determined by his relationship to New York at the time an action is

commenced.  *See Uzan v. Telsim Mobil Telekomunikayson Hizmetleri A.S.*, 856

N.Y.S.2d 625, 626 (N.Y. App. Div. 2008).  To be a New York domiciliary, the

defendant must be physically present in New York and have an intention to remain

in New York indefinitely.  *See McKone v. State Tax Comm'n of N.Y.*, 490 N.Y.S.2d

628, 630 (N.Y. App. Div. 1985).  To determine whether a defendant is a New York

domiciliary, New York courts look at factors such as residence, citizenship,

maintenance of bank accounts, payment of taxes, drivers license, and place of voter

registration.  *See e.g., Laufer v. Hauge*, 528 N.Y.S.2d 878, 879 (N.Y. App. Div.

1988); *McKone*, 490 N.Y.S.2d at 630.  Here, National Integrity does not allege that

Mr. Adler is, or ever was, a domiciliary of New York.  To the contrary, it alleges

that Mr. Adler resides in Calabasas, California.  *NI* Compl. ¶ 36.  Indeed, *none* of

the factors considered by New York courts indicate Mr. Adler was a domiciliary of

New York at the time National Integrity filed its action in November 2011.  He does

not own or maintain a residence in New York, does not have a bank account in New

York, and does not pay taxes in New York.  Adler Decl. ¶¶ 3, 9, 10, 13.

Second, this Court cannot exercise jurisdiction over Mr. Adler pursuant to the

"doing business" test that is used to evaluate whether a New York court has

jurisdiction over a corporate entity.  As an initial matter, there is some question as to

whether the "doing business" test should apply to Mr. Adler individually.[9]  In any

event, for jurisdiction under CPLR 301, a non-domiciliary defendant must be doing

business "not occasionally or casually, but with a fair measure of permanence and

---

[9] The New York Court of Appeals has never held that the "doing business" test can be applied to natural persons.  *See Jacobs v. Felix Bloch Erben Verlag Fur Buhne Film Und Funk KG*, 160 F.Supp.2d 722, 732 N.8 (S.D.N.Y. 2001) (applying New York law) (citing cases).  And it would make no sense to do so.  CPLR 302 was enacted for the purpose of delineating when New York courts can exercise long-arm jurisdiction over non-domicilaries; thus it would be inappropriate for a court to use CPLR 301 to extend the court's jurisdiction over a non-domiciliary natural person.  *See Nilsa v. Blackwell*, 445 N.Y.S.2d 579, 586-87 (N.Y. App. Div. 1981), *superseded on other grounds by statute*, N.Y. C.P.L.R. § 302 (1982).

DEFENDANT N. JOSHUA ADLER'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS TO DISMISS

1  continuity." *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 322 (S.D.N.Y. 1998)

2  (quoting *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*, 77 N.Y.2d

3  28, 33-34 (N.Y. 1990); *Ostrow*, 434 N.E.2d at 694.  Here, National Integrity alleges

4  no direct contact with New York by Mr. Adler whatsoever, let alone the permanent

5  and continuous presence required for the exercise of personal jurisdiction.  In fact,

6  Mr. Adler has never been employed in New York, and has never transacted business

7  in New York in his personal capacity.  Adler Decl. ¶¶ 4, 6.  Accordingly,

8  jurisdiction under CPLR 301 fails.

9  **B.    Mr. Adler Is Not Subject To Personal Jurisdiction
        Under CPLR 302, New York's Long-Arm Statute.**

10        Jurisdiction under New York long-arm statute, CPLR 302, "reaches only a

11  defendant that purposefully avails itself of the privilege of conducting activities

12  within New York, thus invoking the benefits and protections of its laws." *Viacom*

13  *Int'l, Inc. v. Melvin Simon Productions, Inc.*, 774 F. Supp. 858, 862 (S.D.N.Y. 1991)

14  (citations and internal quotations omitted).  Under CPLR 302(a), the key inquiry is

15  whether a defendant's contacts "constitute purposeful availment of the New York

16  forum." *Kimco Exch. Place Corp. v. Thomas Benz, Inc.*, 824 N.Y.S.2d 353, 354

17  (N.Y. App. Div. 2006).  The long-arm statute identifies three circumstances under

18  which New York Courts can exercise personal jurisdiction over non-New York

19  domiciliaries who are subject to a "cause of action arising from any of the act

20  enumerated in this section," two of which are potentially relevant here.[10]  Neither of

21  these two circumstances, however, provide for personal jurisdiction over Mr. Adler.

22

23

24

25  [10] CPLR 302(a)(2) permits a New York court to exercise personal jurisdiction over a
non-domiciliary who "commits a tortious act within the state[.]"  For a tortious act

26  to be "within the state," the tortfeasor must be physically present in the state at the
time of the tortuous act. *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28 (2nd Cir.

27  1997).  Here, Plaintiffs do not allege—nor could they—that Mr. Adler was in New
York when committing any of the acts complained of; thus, CPLR 302(a)(2) cannot

28  provide the basis for personal jurisdiction in this case.

### 1.   CPLR 302(a)(1) Does Not Apply To Mr. Adler.

First, CPLR 302(a)(1) permits the court to exercise personal jurisdiction where a defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. 302(a)(1). While a single business act is sufficient to satisfy CPLR 302(a)(1), there must be "some articulable nexus between the business transacted and the cause of action sued upon." *McGowan v. Smith*, 419 N.E.2d 321, 323 (N.Y. 1981); *See also EAC Sys., Inc. v. Chevie*, 154 A.D.2d 813, 814 (3d Dep't 1989).

Here, National Integrity's Complaint contains no allegations that Mr. Adler personally transacted any business in New York, or contracted to supply goods or services in New York, let alone that any such New York transaction had a nexus with its claims. In fact, Mr. Adler has never transacted business in New York at all in his personal capacity. Adler Decl. ¶ 6. While he has made occasional visits to New York on business, the purpose of those trips was primarily to develop client relationships (with clients other than National Integrity), not to conduct or consummate any transactions (MBS transactions or otherwise). *Id.* ¶ 5. Importantly, Mr. Adler has not met with any National Integrity representatives, and did not conduct any business in New York in connection with National Integrity's claims. *Id.* ¶ 8. Thus, personal jurisdiction over Mr. Adler does not exist under CPLR 302(a)(1). *See Karabu*, 16 F. Supp. 2d at 324 (S.D.N.Y. 1998) (dismissing claims for lack of personal jurisdiction where there was "no basis for . . . [the] contention" that plaintiffs had personally engaged in business in New York); *Merck & Co., Inc.*, 425 F. Supp. 2d at 419-20 (dismissing for lack of personal jurisdiction where complaint did not allege that the individual officer had personally transacted business in New York).

### 2.   CPLR 302(a)(3) Does Not Apply To Mr. Adler.

CPLR 302(a)(3) provides that a New York court may exercise personal jurisdiction over any non-domiciliary who in person or through an agent:

DEFENDANT N. JOSHUA ADLER'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS TO DISMISS

1     [C]ommits a tortious act without the state causing injury to person or

2     property within the state, except as to a cause of action for defamation

3     of character arising from the act, if he (i) regularly does or solicits

4     business, or engages in any other persistent course of conduct, or

5     derives substantial revenue from goods used or consumed or services

6     rendered, in the state, or (ii) expects or should reasonably expect the

7     act to have consequences in the state and derives substantial revenue

8     from interstate or international commerce.

9 CPLR 302(a)(3).  Thus, CPLR 302(a)(3) provides two avenues by which a court

10 may exercise jurisdiction over a non-New York domiciliary who commits a tort

11 outside of New York that results in an injury within the state.  Neither applies to Mr.

12 Adler.

13     ***CPLR 302(a)(3)(i).***  For personal jurisdiction to exist under CPLR

14 302(a)(3)(i), National Integrity must show that: (1) Mr. Adler committed a tort

15 outside of New York; (2) that caused an injury to a party in New York; and (3) Mr.

16 Adler regularly either does or solicits business in New York, engages in persistent

17 conduct in New York, or derives substantial revenue from services rendered in New

18 York.  *See generally Ingraham v. Carroll*, 90 N.Y.2d 592, 597-98 (1997).  Even

19 assuming, for jurisdictional purposes, that Mr. Adler committed a tort in California,

20 no injury was caused to a party in New York.  For purposes of CPLR 302(a)(3)(i),

21 "[t]he situs of the injury is the location of the original event which caused the injury,

22 not the location where the resultant damages are subsequently felt by the plaintiff."

23 *Carte v. Parkaff*, 543 N.Y.S.2d 718, 719 (N.Y. App. Div. 1989); *United Bank of*

24 *Kuwait, PLC v. James M. Bridges, Ltd.*, 766 F. Supp. 113, 116 (S.D.N.Y. 1991)

25 ("The occurrence of financial consequence in New York due to the fortuitous

26 location of plaintiffs in New York is not a sufficient basis for jurisdiction under §

27 302(a)(3) where the underlying events took place outside New York.").  Here,

28 National Integrity's allegations all relate to events that occurred not in New York,

but at Countrywide's headquarters in Calabasas, California. *See, e.g.*, *NI* Compl. ¶¶ 76-282.[11]

Moreover, National Integrity also cannot satisfy the third prong of CPLR 302(a)(3)(i). To show that Mr. Adler "regularly does or solicits business, or engages in any other persistent course of conduct" in New York, National Integrity must allege and prove that he has "sufficient contacts with this state so that it is not unfair to require [him] to answer in this state for injuries . . . cause[d] [] by acts done elsewhere." *Ingraham*, 90 N.Y.2d at 597. This requires National Integrity to show that Mr. Adler has "some ongoing activity *within New York State*" that is more than a single transaction. *Id.* (emphasis in original). As set forth *supra* in Section II(B)(1), Mr. Adler has made only sporadic visits to New York, and has no ongoing business connections with the state. Adler Decl. ¶ 5, 6, 12. Accordingly, Mr. Adler has engaged in no persistent course of conduct that would subject him to personal jurisdiction under CPLR 302(a)(3)(i).

**_CPLR 302(a)(3)(ii)._** Personal jurisdiction under CPLR 302(a)(3)(ii) requires a plaintiff to plead facts that show: (1) the defendant's commission of a tort outside New York; (2) injury to the plaintiff in New York; (3) that the defendant should reasonably have foreseen the New York consequences; and (4) that the defendant derives substantial revenue from interstate or international commerce. *See Fantis Foods v. Standard Importing Co.*, 49 N.Y.2d 317, 325 (N.Y. 1980). Here again, as set forth *supra* in Section II(B)(2), National Integrity has not alleged a cognizable injury that occurred in New York, and thus the second prong of CPLR 302(a)(3)(ii) is not satisfied. *See United Bank of Kuwait*, 766 F. Supp. at 116.

---

[11] In any event, as discussed in detail in the Countrywide Defendants' Memorandum, National Integrity's own allegations make clear that it was *not* a resident of New York, but rather had its principal place of business in Ohio. *See, e.g., NI* Compl. ¶ 17 (alleging that its "investments are managed by portfolio managers located in Cincinnati, Ohio"); *id.* ¶ 18 (alleging that its "investment decisions, including the decision to purchase [the] Certificates, are made by National Integrity officials or its affiliates in Cincinnati, Ohio"); CW Mem. at 50-51.

DEFENDANT N. JOSHUA ADLER'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS TO DISMISS

1    Moreover, the third prong—that the defendant should reasonably have

2  foreseen the New York consequences—is also not satisfied.  For a defendant to have

3  reasonably foreseen consequences in New York, "[t]he nonresident tortfeasor must

4  expect, or have reason to expect, that his or her tortious activity in another State will

5  have direct consequences in New York."  *Ingraham*, 90 N.Y.2d at 598.  "Mere

6  foreseeability of in-state consequence and failure to avert that consequence is not

7  sufficient to establish personal jurisdiction" under 302(a)(3)(ii).  *Cortlandt Racquet*

8  *Club, Inc. v. Oy Saunatec, Ltd.*, 978 F. Supp. 520, 523 (S.D.N.Y. 1997).  "To serve

9  as a basis for jurisdiction, foreseeability must be coupled with a purposeful act

10  invoking the benefits and protections of New York Law."  *Id.*  at 372.

11    Here, National Integrity merely alleges that Mr. Adler "signed . . .

12  Registration Statements" for 5 MBS it allegedly purchased (*NI* Compl. ¶ 36), but

13  does not allege that any such signing occurred in New York, or that the registration

14  statements were specifically directed at or targeted at any New York entity.  This

15  one allegation is insufficient to show that Mr. Adler purposefully invoked the

16  benefits and protections of New York law or intended his actions to have an effect

17  in New York.  Thus, personal jurisdiction over Mr. Adler does not exist under

18  CPLR 302(a)(3)(ii).

19  **III.   Constitutional Due Process Does Not Authorize Jurisdiction
      In Either Ohio Or New York.**

20    Even assuming that personal jurisdiction over Mr. Adler existed under New

21  York or Ohio law—which it does not—the exercise of personal jurisdiction over

22  Mr. Adler would still be inappropriate because he lacks the requisite minimum

23  contacts with Ohio and New York to satisfy the Due Process Clause of the

24  Fourteenth Amendment.  *See Karabu*, 16 F. Supp. 2d at 324, 326 (S.D.N.Y. 1998)

25  (citing *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d

26  Cir. 1996) (even if jurisdiction exists under CPLR 301 or 302, court must still

27  examine whether such an exercise of jurisdiction comports with due process);

28  *Goldstein v. Christiansen*, 638 N.E.2d 541, 543 (Ohio 1994) (even if jurisdiction

1  exists under Ohio's "long arm" statute, the second step of the process is analyzing
2  whether granting jurisdiction comports with due process).

3       In determining whether the requirements of federal due process are met, the
4  Court should apply its own Circuit's law. *In re Dynamic*, 2005 WL 2988715, at *2.
5  For a court to exercise personal jurisdiction over a nonresident defendant consistent
6  with due process, that defendant must have "certain minimum contacts" with the
7  relevant forum "such that the maintenance of the suit does not offend 'traditional
8  notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S.
9  310, 316 (1945); *SEC v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007). "Minimum
10  contacts" may arise from contacts sufficient to establish either "general" or
11  "specific" personal jurisdiction over a non-resident defendant. *Burger King Corp. v.*
12  *Rudzewicz*, 471 U.S. 462, 472-73 (1985). For "general" jurisdiction, "the defendant
13  must engage in "continuous and systematic general business contacts" that
14  approximate physical presence in that state. *Helicopteros Nacionales de Colombia,*
15  *S.A. v. Hall*, 466 U.S. 408, 414-16 (1984); *see also Schwarzenegger*, 374 F.3d at
16  801 (internal quotation omitted). "Specific" personal jurisdiction requires a finding
17  that the defendant "purposefully avail[ed] himself" of the privilege of conducting
18  activities in the forum state that are directly related to the plaintiffs' claims. *Asahi*
19  *Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano County*, 480 U.S. 102, 109
20  (1987). As to Mr. Adler, jurisdiction in both *Western & Southern* and *National*
21  *Integrity* fails under both tests.

## A.    Mr. Adler's Contacts Must Be Analyzed Separately From Contacts of Countrywide Or Any Other Defendant.

23       Due process requires that "[e]ach defendant's contacts with the forum State
24  must be assessed individually." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770,
25  781 n.13 (1984). Accordingly, "[t]he fact that a corporation is subject to jurisdiction
26  in the forum state, however, does not necessarily confer jurisdiction over its
27  individual officers." *Brown v. Gen. Steel Domestic Sales*, 2008 WL 2128057, at *10
28  (C.D. Cal. May 19, 2008). Rather, "the court must examine the individual's

1   contacts with the forum to determine if they are sufficient to warrant the exercise of

2   jurisdiction over him in connection with forum-related claims." *Id.*  Thus, the

3   allegations in the *Western & Southern* and *National Integrity* complaints regarding

4   Countrywide's conduct and the conduct of any other defendant are irrelevant—only

5   Mr. Adler's own, personal contacts with Ohio and New York subject him to

6   personal jurisdiction.

7   **B.     Mr. Adler Is Not Subject to General Jurisdiction.**

8   General jurisdiction is absent because Mr. Adler did not have substantial,

9   "continuous and systematic" contacts with Ohio or New York.  *Helicopteros,* 466

10  U.S. at 416 & n.9.  "This is an exacting standard, . . . because a finding of general

11  jurisdiction permits a defendant to be haled into court in the forum state to answer

12  for any of its activities anywhere in the world."  *Schwarzenegger*, 374 F.3d at 801.

13  Here, Mr. Adler had no contacts whatsoever with Ohio, and virtually no

14  contacts with New York.  Indeed, the *Western & Southern* and *National Integrity*

15  complaints allege no relationship between Mr. Adler and Ohio or New York,

16  respectively, nor could they.  As noted above, Mr. Adler is a California resident.

17  Adler Decl. ¶ 2; *W&S* AC ¶ 36; *NI* Compl. ¶ 36.  He does not own—nor has he ever

18  owned—property in Ohio.  Adler Decl. ¶ 21.  He does not maintain any ongoing

19  contact with Ohio and did not personally conduct business in Ohio during the

20  relevant time period.  *Id.* ¶¶ 14, 15, 18, 24.  In fact, Mr. Adler has never stepped foot

21  in Ohio—during the time period relevant to this action or ever.  *Id.* ¶ 16.  Likewise,

22  Mr. Adler has no continuous contacts with New York, nor is he alleged to have any

23  such contacts.  He has never lived in New York, nor has he ever been employed

24  there.  *Id.* ¶¶ 3, 4.  He does not own or lease any real property in New York, and

25  maintains no bank accounts, telephone listings, or professional licenses in the state.

26  *Id.* ¶¶ 9-12.  He has never conducted business in New York in his personal capacity.

27  *Id.* ¶ 6.  In fact, Mr. Adler's only contact with New York has been occasional visits.

28  *Id.* ¶ 5.  In short, Mr. Adler had no contact with Ohio at all and virtually no contact

1 with New York, let alone the substantial, "continuous and systematic" contacts

2 necessary for general jurisdiction to apply.  *Helicopteros*, 466 U.S. at 416.

3 ### C. Mr. Adler Is Not Subject to Specific Jurisdiction.

4 The Ninth Circuit has adopted a three-part test to determine whether specific

5 jurisdiction exists over a defendant:  (1) The non-resident defendant must

6 purposefully direct his activities or consummate some transaction with the forum or

7 resident thereof; or perform some act by which he purposefully avails himself of the

8 privilege of conducting activities in the forum, thereby invoking the benefits and

9 protections of its laws; (2) the claim must be one which arises out of or relates to the

10 defendant's forum-related activities; and (3) the exercise of jurisdiction must

11 comport with fair play and substantial justice, *i.e.* it must be reasonable.

12 *Schwarzenegger*, 374 F.3d at 802.  Plaintiffs both fail to meet any prong of this test

13 with respect to Mr. Adler.

14 First, for tort-based claims such as those at issue here, Plaintiffs must allege

15 and establish that Mr. Adler purposefully directed actions at Ohio and New York,

16 respectively.  *See id.*  Specifically, purposeful direction requires that:  (1) the

17 defendant committed an intentional act; (2) expressly aimed at the forum state;

18 (3) causing harm that the defendant knows is likely to be suffered in the forum state.

19 *Id.* at 804 (citation omitted).  For Mr. Adler to have "expressly aimed" his conduct

20 at the forum state, Plaintiffs must allege that he "did something more than commit a

21 foreign act with foreseeable effects in the forum state"—by showing, for example,

22 "individualized targeting" of residents in Ohio or New York.  *Pebble Beach Co. v.*

23 *Caddy*, 453 F.3d 1151, 1157 (9th Cir.) (internal quotations omitted); *Alsop v.*

24 *Carolina Custom Products, Inc.*, 2007 WL 2441025, at *7 (C.D. Cal. June 29, 2007)

25 ("[D]efendant must 'individually target' the forum state rather than just commit an

26 act that has foreseeable effects in the forum state.").

27 Here, Plaintiffs come nowhere close to meeting their burden of showing that

28 Mr. Adler individually targeted Ohio or New York in any way.  Each complaint

contains only *one* allegation regarding Mr. Adler: that he "signed . . . Registration Statements" for seven MBS allegedly purchased by Plaintiffs. *W&S* AC ¶ 36; *NI* Compl. ¶ 36. The complaints are void of any allegations that Mr. Adler specifically targeted Plaintiffs, or any other resident of Ohio or New York, in signing these registration statements. This is fatal to personal jurisdiction over Mr. Adler. *See McIntyre Machinery, Ltd.*, 131 S. Ct. 2780, 2790 (2011) (no jurisdiction where plaintiff failed to establish that the defendant "engaged in conduct purposefully directed at New Jersey" or that it "purposefully availed itself of the New Jersey market"). Moreover, while Plaintiffs each vaguely allege that *all* of the "Officer Defendants successfully solicited Western & Southern's purchase of the Certificates at issue" (*W&S* AC ¶ 296; *NI* Compl. ¶ 296), such a collective and conclusory allegation fails to show what—if anything—Mr. Adler personally did to solicit Plaintiffs or how this alleged conduct was specifically aimed at Ohio or New York. *See Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) ("mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden").[12]

Second, the Ninth Circuit has adopted a "but for" test to determine whether a

---

[12] In *New Mexico State Inv. Council v. Countrywide Fin. Corp.*, No. D-0101-CV-2008-02289 (N.M. Dist. Ct.), another MBS action in which Mr. Adler was named as a defendant, the court dismissed the complaint against the individual defendants for lack of personal jurisdiction. Specifically, in *New Mexico*, like this case, the plaintiffs sued several Countrywide entities and their former officers, including Mr. Adler, alleging violations of the 1933 Act based upon alleged false and misleading statements relating to the sale of Countrywide MBS. Plaintiffs argued that the *New Mexico* court could assert personal jurisdiction over the individual defendants because the MBS sales activities were directed nationwide and because those individual defendants signed the MBS offering documents at issue in that case. The court flatly rejected the argument, holding that the minimum contacts test and Constitutional due process require more: "I think the Plaintiffs' position fails because, in my view, there's no identified activity of any Individual defendant, which is intentionally directed to New Mexico." *See* Order Granting Motions to Dismiss for Lack of Personal Jurisdiction, *New Mexico State Inv. Council v. Countrywide Fin. Corp.*, No. D-0101-CV-2008-02289 (N.M. Dist. Ct.) (Apr. 14, 2009), RJN Ex. 119; Hr'g Tr., Mar. 6, 2009 (incorporated into Court's Apr. 14, 2009 Order), RJN Ex. 120.

1  plaintiff's claim arises out of a defendant's forum-related contacts. *Glencore Grain*

2  *Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir.

3  2002). Under this test, Plaintiffs must demonstrate that "but for" Mr. Adler's

4  contacts with Ohio or New York, their claims would not have arisen. *Id.* Plaintiffs

5  have not—and cannot—meet this test. Neither Plaintiff has alleged any contact by

6  Mr. Adler with Ohio or New York but for which it would not have been injured.

7  Indeed, they have not alleged any contact with Ohio or New York at all. *See In re*

8  *Dynamic*, 2005 WL 2988715, at *9 (if there are no minimum contacts at all, then by

9  definition the "arising out of" requirement is not met).

10     Finally, because Plaintiffs cannot satisfy either of the first two requirements

11  for "specific" personal jurisdiction, this Court need not even reach the third

12  requirement—that the exercise of jurisdiction is reasonable. *Schwarzenegger*, 374

13  F.3d at 802. However, even assuming that the first two requirements have been met,

14  personal jurisdiction is not reasonable as to Mr. Adler. Personal jurisdiction is

15  appropriate only where summoning a defendant "does not offend 'traditional notions

16  of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316 (citations omitted).

17  Haling Mr. Adler into Ohio—a state that he has never even set foot in—or New

18  York—a state that he only sporadically visits and does not conduct any personal

19  business in—fails this common sense test. The reasonableness determination

20  requires consideration of a number of factors: (1) the extent of the defendant's

21  purposeful interjection into the forum state; (2) the burden on the defendant in

22  defending in the forum; (3) the extent of the conflict with the sovereignty of the

23  defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the

24  most efficient judicial resolution of the controversy; (6) the importance of the forum

25  to the plaintiff's interest in convenient and effective relief; and (7) the existence of

26  an alternative forum. Here, the factors weigh heavily in Mr. Adler's favor, given

27  that he has had no contact whatsoever with Western & Southern or Ohio, or

28  National Integrity or New York. Indeed, if simply signing a registration statement

1  were sufficient to confer sufficient minimum contacts for personal jurisdiction, Mr.

2  Adler would be subject to suit in, and forced to defend himself, in *every* state.  As

3  the United States Supreme Court has recently recognized, this is not the law.  *See*

4  *McIntyre*, 131 S.Ct. at 2789 (holding no jurisdiction were the facts alleged by

5  plaintiff "may reveal an intent to serve the U.S. market, but they do not show that

6  [the defendant] purposefully availed itself of the New Jersey market").

7  <u>**CONCLUSION**</u>

8        For the reasons set forth herein, the state law claims asserted by Western &

9  Southern (Counts I-V) and National Integrity (Counts I-V) against Mr. Adler must

10  be dismissed for lack of personal jurisdiction.

11

12  Dated:  December 7, 2011        **GOODWIN PROCTER LLP**

13                                  /s/ Brian E. Pastuszenski
                                    Brian E. Pastuszenski (*pro hac vice*)
                                    Lloyd Winawer (State Bar No. 157823)

14                                  Inez H. Friedman-Boyce (*pro hac vice*)
                                    Brian C. Devine (State Bar No. 222240)

15                                  *Counsel for the Countrywide Defendants*

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT N. JOSHUA ADLER'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS TO DISMISS