UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

THE HON. MARIANA R. PFAELZER, JUDGE PRESIDING

```
In Re Countrywide Financial     )
Corp. Mortgage-Backed Securities )
Litigation,                      )
                                 )
                                 ) No. ML 11-2265 MRP
                                 )
_____)
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

Friday, May 10, 2013; 11:07 A.M.

STATUS CONFERENCE

Wil S. Wilcox, CSR 9178
Official U.S. District Court Reporter
312 North Spring Street, # 432-A
Los Angeles, California 90012
Phone: (213) 290-2849

```
 1   APPEARANCES OF COUNSEL:

 2

 3   FOR THE ALLSTATE INSURANCE COMPANY:

 4                      QUINN, EMANUEL, URQUHART & SULLIVAN, LLP
                        BY: Marc L. Greenwald
 5                      Attorney at Law
                        51 Madison Avenue, 22nd Floor
 6                      New York, New York 10010
                        212-849-7000
 7
     FOR THE MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY:
 8
                        QUINN EMANUEL URQUHART AND SULLIVAN, LLP
 9                      BY: Harry A. Olivar, Jr.
                        Attorney at Law
10                      865 South Figueroa Street, 10th Floor
                        Los Angeles, California 90017-2543
11                      213-443-3000

12   FOR THE PLAINTIFF BANK HAPOALIM, B.M.:

13                      LABATON SUCHAROW
                        BY:  MARTIS ALES
14                      ATTORNEY AT LAW
                        140 Broadway
15                      New York, New York 10005
                        212-907-0700
16
     FOR THE PLAINTIFF NATIONAL INTEGRITY LIFE INSURANCE COMPANY:
17
                        LYSAGHT LAW GROUP, LLP
18                      BY: Brian C. Lysaght
                        Attorney at Law
19                      233 Wilshire Boulevard, Suite 700
                        Santa Monica, California 90401
20                      310-566-8166

21                               -AND-

22                      WOOLMUTH MAHER & DEUTSCH, LLP
                        BY: Steven S. Fitzgerald
23                      Attorney at Law
                        500 Fifth Avenue, Suite 1200
24                      New York, New York 10110
                        212-382-3300
25
```

```
 1              APPEARANCES OF COUNSEL: (Continued)

 2   FOR THE PLAINTIFF FDIC AS RECEIVER FOR UNITED WESTERN BANK,
     F.S.B., CORPORATION:
 3
                         GRAIS AND ELLSWORTH, LLP
 4                       BY: David J. Grais
                         Attorney at Law
 5                       1211 Avenue of the Americas
                         New York, New York 10036
 6                       212-755-0100

 7                              -AND-

 8                       MCLEOD, MOSCARINO, WITHAM & FLYNN LLP
                         BY:  JOHN M. MOSCARINO
 9                       Attorney at Law
                         Los Angeles, California 90017
10                       213-627-3600

11   FOR THE DEFENDANT COUNTRYWIDE FINANCIAL CORPORATION:

12                       GOODWIN PROCTER, LLP
                         Attorneys at Law
13                       BY: Brian E. Pastuszenski, Esq.
                         Inez Friedman-Boyce, Esq.
14                       53 State Street Exchange Place
                         Boston, Massachusetts 02109
15                       617-570-1000

16                              -AND-

17                       GOODWIN PROCTER
                         BY:  DANIEL J. TYUKODY
18                       and  TEODORA E. MANOLOVA
                         Attorneys at Law
19                       601 South Figueroa Street, Suite 4100
                         Los Angeles, CA 90017
20                       213-426-2500

21   FOR THE DEFENDANT DEUTSCHE BANK SECURITIES, INC.:

22                       SIMPSON THACHER & BARTLETT LLP
                         BY:  ALAN C. TURNER
23                       Attorney at Law
                         425 Lexington Avenue
24                       New York, NY 10017-3954
                         212-455-2472
25
```

4

```
1                   APPEARANCES OF COUNSEL: (Continued)

2

3    FOR THE DEFENDANT MERRILL LYNCH - PRINCIPAL LIFE INSURANCE
     COMPANY CASE:
4
                         MUNGER TOLLES AND OLSON, LLP
5                        Attorneys at Law
                         BY: James C. Rutten, Esq.
6                        355 South Grand Avenue, 35th Floor
                         Los Angeles, California 90071-1560
7                        213-683-9100

8    FOR THE DEFENDANT UBS SECURITIES, LLC:

9                        GIBSON DUNN AND CRUTCHER, LLP
                         Attorneys at Law
10                       BY: Alexander K. Mircheff, Esq.
                         333 South Grand Avenue
11                       Los Angeles, California 90071-3197
                         213-229-7000
12
     FOR THE DEFENDANT COUNTRYWIDE FINANCIAL CORPORATION IN THE
13   MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY CASE:

14                       SHEARMAN & STERLING LLP
                         BY:  STEPHEN D. HIBBARD
15                       Attorney at Law
                         Four Embarcadero Center
16                       San Francisco, CA 94111-5994
                         415-616-1100
17
     FOR THE DEFENDANT ERIC SIERACKI:
18
                         DLA PIPER
19                       BY:  GRANT P. ALEXANDER
                         Attorney at law
20                       2000 Avenue of the Stars
                         Suite 400 North Tower
21                       Los Angeles, CA 90067-4704
                         310-595-3020
22

23

24

25
```

```
 1                APPEARANCES OF COUNSEL: (Continued)

 2   FOR THE DEFENDANT STANFORD KURLAND:

 3                         CALDWELL, LESLIE & PROCTOR, PC
                          Attorneys at Law
 4                        BY: Jeanne A. Fugate
                          Attorney at Law
 5                        725 South Figueroa Street 31st Floor
                          Los Angeles, CA 90017-5524
 6                        213-629-9040

 7   FOR THE PLAINTIFF PLAINTIFF MINNESOTA LIFE INSURANCE COMPANY:

 8                         LARSON KING, LLP
                          Attorneys at Law
 9                        BY: David M. Wilk, Esq.
                          30 East 7th Street, Suite 2800
10                        St. Paul, Minnesota 55101
                          651-312-6500
11
     FOR THE DEFENDANT JP MORGAN SECURITIES, LLC, IN THE
12   MASS MUTUAL CASE:

13                         SULLIVAN & CROMWELL, LLP
                          BY:  DIANE L. MCGIMSEY
14                        Attorney at Law
                          1888 Century Park East
15                        Los Angeles, CA 90067-1725
                          310-712-6644
16

17

18

19

20

21

22

23

24

25
```

```
 1            LOS ANGELES, CA.; FRIDAY, MAY 10, 2013; 11:07 A.M.

 2                              -oOo-

 3            THE CLERK:  Calling Item Number 1, 11-ML-02265,

 4    In Re the Countrywide Financial Corporation Mortgage-Backed

 5    Securities Litigation.

 6            Counsel, please state your appearances.

 7            MR. GREENWALD:  Marc Greenwald, Quinn Emanuel, on

 8    behalf of Allstate.  Good morning, Your Honor.

 9            MR. OLIVAR:  Good morning, Your Honor.

10    Harry Olivar from MassMutual.

11            MS. ALES:  Your Honor, good morning.  Martis Ales,

12    Labaton Sucharo, on behalf of Bank Hapoalim.

13            MR. LYSAGHT:  Good morning, Your Honor.

14    Brian Lysaght appearing for National Integrity, and with me

15    is Mr. Steve Fitzgerald also for National Integrity.

16            MR. FITZGERALD:  Good morning, Your Honor.

17            MR. GRAIS:  Good morning, Your Honor.

18    David Grais, Grais & Ellsworth, New York, New York, for the

19    Federal Deposit Insurance Company.

20            MR. MOSCARINO:  Good morning, Your Honor.

21    John Moscarino for the FDIC as well.

22            THE COURT:  I didn't hear you.

23            MR. MOSCARINO:  John Moscarino for the FDIC.

24            THE COURT:  Ah, good.  All right.

25            Please.
```

1          MR. PASTUSZENSKI:  Good morning, Your Honor.

2    Brian Pastuszenski from the Goodwin Procter firm for

3    the Countrywide defendants, and with me is my partner

4    Dan Tyukody also from Goodwin Procter.

5          MR. TYUKODY:  Good morning, Your Honor.

6          MR. TURNER:  Good morning, Your Honor.

7    Alan Turner from Simpson Thacher & Bartlett representing

8    Deutsche Bank Securities in the MassMutual action.

9          MR. RUTTEN:  Good morning, Your Honor.  Jim Rutten

10   with Munger, Tolles & Olson on behalf of the Bank of America

11   defendants and the Maryland defendants in the Bank Hapoalim

12   matter.

13         MR. MIRCHEFF:  Good morning, Your Honor.

14   Alex Mircheff with Gibson Dunn & Crutcher for

15   UBS Securities, LLC, appearing in the MassMutual case and

16   the FDIC case.

17         MR. HIBBARD:  Good morning, Your Honor.

18   Steve Hibbard of Shearman & Sterling appearing on behalf of

19   the Countrywide defendants in the MassMutual action.

20         MR. ALEXANDER:  Good morning, Your Honor.

21   Grant Alexander of DLA Piper on behalf of defendant

22   Eric Sieracki:

23         MS. MCGIMSEY:  Good morning, Your Honor.

24   Diane McGimsey of Sullivan & Cromwell on behalf of JP Morgan

25   Securities, LLC in the MassMutual action.

8

```
1            MS. FUGATE:  Good morning, Your Honor.

2   Jeanne Fugate of Caldwell Leslie & Proctor on behalf of

3   defendant Sanford Kurland.

4            THE COURT:  Is that it?

5            MR. WILK:  Good morning, Your Honor.  David Wilk

6   here on behalf of Minnesota Life.

7            THE COURT:  All right.  Now, are you going to give

8   us a report, Mr. Pastuszenski?

9            MR. PASTUSZENSKI:  Certainly, Your Honor.

10           Good morning, Your Honor.  Brian Pastuszenski from

11  Goodwin Proctor for the Countrywide defendants in all cases

12  other than the MassMutual matter.

13           Your Honor, the current state of play, I think

14  overall is a very positive one.  Defendants have resolved

15  with one exception all of the issues that had been

16  unresolved at the point where we last spoke in regard to the

17  overall schedule, proposed schedule for discovery, and to

18  the degree that that schedule addressed scope issues, we've

19  reached agreement as well.

20           One issue vis-a-vis the Countrywide defendants

21  that remained open at the last time we spoke with Your Honor

22  has been resolved, and that namely was a concern that the

23  plaintiffs had expressed regarding the use of closing loan

24  schedules versus the use of loan tapes in building their

25  samples, whenever that takes place.
```

```
 1            THE COURT:  Explain that to me.

 2            MR. PASTUSZENSKI:  Yes, Your Honor.  At one point,

 3   the plaintiffs had taken the position that Countrywide

 4   should produce loan tapes, listings of all the loans in the

 5   various --

 6            THE COURT:  Yes.

 7            MR. PASTUSZENSKI:  -- securitizations for all of

 8   the securitizations that Countrywide did, not just the ones

 9   in these cases.

10            THE COURT:  Yes.

11            MR. PASTUSZENSKI:  There was a discussion among

12   the plaintiffs and Countrywide regarding the use for any

13   matters other than the offerings and tranches that the

14   plaintiffs bought because of various issues associated with

15   locating the tapes and ensuring that they are, in fact,

16   tapes for the particular tranche or offering.  We discussed

17   the use of closing loan schedules which are readily

18   available.

19            And what ultimately the parties have agreed on is

20   that Countrywide will make available closing loan schedules

21   for all offerings other than those that the plaintiffs

22   actually bought in.  For the ones the plaintiffs bought in,

23   we will produce loan tapes.  And we've agreed that to the

24   extent that there are variances in information that's

25   available on a schedule versus information available on a
```

1    tape, defendants will not take the position that plaintiffs'

2    sampling approaches are in any way deficient as a result of

3    that, those data differences.

4          That was the only issue that remained unresolved.

5    We've now worked out wording, and in the final version of

6    the schedule that the parties will submit to Your Honor for

7    Your Honor's execution that language will be reflected.

8          THE COURT:  Now, what did you do about the close

9    off of discovery?

10         MR. PASTUSZENSKI:  Well, Your Honor, in the

11   schedule that the parties have submitted to you --

12         THE COURT:  I know.

13         MR. PASTUSZENSKI:  -- expert discovery closes on

14   August 8th and there is no disagreement among the parties on

15   that date.  That is a date that we've all agreed to.  That

16   date then drives two other dates; summary judgment motions

17   filed on August 29th, 2014; with a hearing, a proposed

18   hearing, if it's acceptable to Your Honor, a proposed

19   hearing on summary judgment motions for December 22nd, 2014.

20         THE COURT:  No.

21         MR. PASTUSZENSKI:  That's not acceptable to

22   Your Honor?

23         THE COURT:  No.

24         MR. PASTUSZENSKI:  Well, there is no dispute among

25   the parties anyway, Your Honor, on that.

1          THE COURT:  We are going to have to move up the

2     date for the end of discovery from where you have it and

3     decide that fairly early next year the motion for summary

4     judgment would be filed.  There is not any reason why we

5     can't do that or you can't do that.

6          MR. PASTUSZENSKI:  Your Honor, if I may address

7     the timing issue.

8          THE COURT:  Do it.  Yes.

9          MR. PASTUSZENSKI:  This schedule is driven in

10    large part by plaintiffs' desire to inspect the various

11    loans or at least a sample of loans that were pooled into

12    the various offerings, and we understand plaintiffs intend

13    to re-underwrite them.  That is an extremely time-consuming

14    process.

15         THE COURT:  I should say it is.

16         MR. PASTUSZENSKI:  Time consuming and also quite

17    expensive, Your Honor.

18         THE COURT:  Other people have tried to do that --

19         MR. PASTUSZENSKI:  Yes, Your Honor.

20         THE COURT:  -- and found it to be very difficult.

21         MR. PASTUSZENSKI:  And as you might expect, Your

22    Honor, in other matters involving Countrywide, there has

23    been that sort of discovery process involving -- by

24    plaintiffs an attempt to re-underwrite loans, and it takes

25    quite a while.

```
 1            Once the plaintiffs have done that and have
 2   submitted their expert reports to us, we need an adequate
 3   amount of time to look at the loans that have been reviewed,
 4   look at the conclusions by their expert or by their loan
 5   re-underwriter and then have a chance to rebut those.  That
 6   amount of time is built into the schedule and in turn drives
 7   the overall timetable.
 8            THE COURT:  Well, one of the things that's
 9   difficult about this for the court -- I see what you mean.
10   If that is what the parties are going to do, maybe I will
11   change my mind about the cutoff date.
12            MR. PASTUSZENSKI:  Well, that, Your Honor, is a
13   major component of why the schedule has been worked out the
14   way it has.  Another aspect of this, of course, is that the
15   plaintiffs in this case are as important a source of
16   discovery as Countrywide or as any of the defendants in
17   regard to --
18            THE COURT:  I certainly know that.
19            MR. PASTUSZENSKI:  -- in regard to knowledge and
20   reliance and sophistication and we -- because this process
21   is just getting started, the defendants do not yet --
22            THE COURT:  That has nothing to do with experts.
23            MR. PASTUSZENSKI:  No.  That is not an expert
24   issue, certainly not initially an expert issue.  It's a fact
25   issue.  What did the plaintiffs understand?  What did they
```

 1    know?  What risks were they aware of and decided to take?

 2          But until we have received plaintiffs' productions

 3    of documents and responses to other discovery and have a

 4    chance to take depositions, we are not going to be in a

 5    position to address that.  So that is also a major component

 6    of the schedule.  But the loan re-underwriting by itself,

 7    Your Honor, is something that will take a tremendous amount

 8    of time.  And as you may recall --

 9          THE COURT:  Well, of course, it will take a

10    tremendous amount of time and it is very, very difficult to

11    do.

12          MR. PASTUSZENSKI:  Yes, Your Honor.  It is

13    extremely time consuming.  At least in our experience, and I

14    think that this is not unlike the experience of other loan

15    originators, each loan file can be anywhere from 400 to 500

16    pages long.  And depending on the number of loans that the

17    plaintiffs identify as the basis of their sample and the

18    basis of their re-underwriting task, that just multiplies

19    and becomes an incredible population of information that has

20    to be reviewed, digested.  And then once defendants have

21    learned whatever conclusions the plaintiffs have reached, we

22    need to be able to look at the same files.

23          One thing I was going to say, Your Honor, is when

24    we initially proposed a timetable, Your Honor expressed

25    concern that it was too long.  We then went back with the

```
 1   plaintiffs and worked hard again and the original schedule
 2   had the end dates in 2015.  Those dates were all pushed into
 3   2014.
 4             THE COURT:  That will not do.
 5             MR. PASTUSZENSKI:  Well, Your Honor, and we are
 6   not proposing that.
 7             THE COURT:  No, you are not now.
 8             MR. PASTUSZENSKI:  We are not now, right.  We did
 9   initially, that's correct.
10             THE COURT:  All right.  Well, I can't say that I
11   have any right to interfere with the way you are going to
12   prepare your cases on both sides.
13             So let's hear from them.  Please.
14             MR. PASTUSZENSKI:  Thank you, Your Honor.
15             THE COURT:  If that's what you want to do, then I
16   think you have to have the time to do it.
17             MR. GREENWALD:  Thank you, Your Honor.
18   Mark Greenwald from Quinn Emanuel for Allstate.
19             As Mr. Pastuszenski said, the parties have agreed
20   and we do need sufficient time to engage in re-underwriting.
21             THE COURT:  You certainly do.
22             MR. GREENWALD:  And so we appreciate the court's
23   desire for a faster schedule which is what we want too and
24   what we tried to negotiate, but it was a negotiation and an
25   agreement and we believe that the present schedule that is
```

1   proposed to the court, as long as we stick to the deadlines,

2   and that's one of the deadlines proposed and that's one of

3   the issues we wanted to bring to the court's attention

4   today, is that it seems some of the deadlines appear to be

5   slipping because we haven't hit some of the milestones

6   already.

7           But as long as we stick to these deadlines, we

8   have agreed to the schedule and believe it provides both

9   sides with sufficient time to prepare their cases.

10          THE COURT:  All right.  I don't have a document

11  that does this, do I, to sign?

12          MR. GREENWALD:  There is a proposed schedule,

13  Document 260, but it still had two disputes.

14          THE COURT:  Yes.

15          MR. GREENWALD:  And there is one dispute remaining

16  between two of the plaintiffs, MassMutual and the FDIC and

17  the underwriter defendants that Mr. Olivar from MassMutual

18  would like to address.  But Document 260 has all the dates

19  proposed by the parties.

20          THE COURT:  All right.  Now, let's hear from you,

21  if you want to.

22          MR. OLIVAR:  Yes, Your Honor, as you can see from

23  the schedule that's been presented to you today,

24  May 10th was an important date.  As soon as we can get a

25  protective order signed, Countrywide is standing ready to

1    produce its prior document productions.

2           THE COURT:  I know.

3           MR. OLIVAR:  Plaintiffs are too.  The one issue we

4    have has different positions on Page 4 of what's been

5    submitted, Your Honor, and the question is:  What are the

6    underwriter defendants going to produce up front to enable

7    this schedule to work?

8           On the plaintiffs' side, we are asking for less

9    than we originally asked for which is --

10          THE COURT:  What are you asking for specifically?

11          MR. OLIVAR:  We are asking for the underwriters'

12   productions in cases involving Countrywide, prior

13   productions and depositions they have given in cases where

14   Countrywide is at issue, because the underwriters' knowledge

15   of Countrywide's practices is a key issue in these cases and

16   we want a head start to get what they produced previously on

17   that subject.

18          THE COURT:  And what do they say?

19          MR. OLIVAR:  They say only these deals, only the

20   deals that are at issue.  We are not going to tell you what

21   we knew about Countrywide generally.  We are only going to

22   tell you what we knew in the context of these deals, and

23   that proposal results in zero documents from JP Morgan, zero

24   transcripts, zero documents and transcripts from

25   Deutsche Bank, and four deposition transcripts from UBS and

 1  some documents from UBS.  We don't think that's adequate.

 2          We've got a schedule where we agreed to complete

 3  depositions in January.  That includes the depositions of

 4  all of the underwriters' people.  We don't think what they

 5  are calling the normal discovery process of objections,

 6  motions to compel, orders is going to make that work.

 7          THE COURT:  Well, you are not going to do that

 8  anyway.

 9          MR. OLIVAR:  That's right.  That's not what we

10  want.  We want their productions now so we can get going and

11  get their witnesses deposed by January.  Everyone else is

12  producing their prior productions that relate to

13  Countrywide.  We don't see why the underwriters can't do

14  that and get us going.

15          THE COURT:  Well, that's fairly big, isn't it,

16  considering the size of Countrywide?

17          MR. OLIVAR:  We don't know how big it is, Your

18  Honor.  We asked, well, how many Countrywide transcripts

19  have you given, how many documents are you talking about

20  that you previously produced?

21          THE COURT:  What do you mean transcripts?

22          MR. OLIVAR:  Well, transcripts of their witnesses

23  who were deposed in Countrywide cases.  They have witnesses

24  who worked on Countrywide matters, securitizations, knew

25  Countrywide's practice.s, those people have been deposed.

1    We said, Deutsche Bank, you want to give us nothing.  JP

2    Morgan, you want to give us nothing.  UBS, four transcripts.

3    How many Countrywide transcripts are you talking about?

4    What are you not giving us?  They wouldn't tell us.

5            They wouldn't tell us how many witnesses had been

6    deposed on Countrywide.  They wouldn't tell us about prior

7    productions.  They said, we are not going to do that.  We

8    are going to stick to these deals and basically you will get

9    this handful of material and you have to go through the

10   normal process to get everything else to find out what we

11   really knew about the entity and its practices.  We don't

12   think that's going to work.

13           THE COURT:  You asked them for the transcripts of

14   depositions taken in Countrywide cases involving that

15   particular underwriter?

16           MR. OLIVAR:  Yes, Your Honor.

17           THE COURT:  Well, all right.  Well, let's hear

18   from the underwriters.

19           MR. OLIVAR:  Thank you, Your Honor.

20           THE COURT:  Yes.

21           MR. TURNER:  Good morning, again, Your Honor.

22   Alan Turner from Simpson Thacher representing Deutsche Bank

23   Securities in the MassMutual action.  My colleagues in the

24   MassMutual action have asked me to lead off.

25           The underwriter defendants have every intent to

1  engage as efficiently as we can in discovery in this action

2  and moves things forward as quickly as we can.  But what the

3  plaintiff, the MassMutual plaintiff has asked for will not

4  do that.  It will only result in the production of documents

5  that have been requested in other actions that are not

6  tailored to the issues in this case, and it will introduce

7  into this case large volumes of documents that we believe

8  are irrelevant.

9          Mr. Olivar said that they had --

10         THE COURT:  Give me an example.

11         MR. TURNER:  I will, Your Honor.  The plaintiffs

12 have asked for everything produced and all transcripts from

13 any action involving Countrywide.

14         THE COURT:  No.  That's obviously just a

15 generality to me.  What I'm talking about -- what he just

16 talked about is deposition transcripts.  Now, I presume that

17 also includes some documents?

18         MR. TURNER:  Yes.  If we look at the cases that

19 involve any Countrywide securitizations for the three

20 underwriter defendants in MassMutual, that's more than eight

21 and a half million pages of documents.  It's only half a

22 dozen transcripts because depositions in those cases have

23 not commenced or are only in their early stages, but for the

24 three underwriter defendants, UBS, JP Morgan and

25 Deutsche Bank, it's eight and a half million pages.  That is

1    information that took us a long time to compile.

2          THE COURT:  Don't tell me that's too many.  You

3    should see what I've read over a period of time.  That's not

4    too many.  But go on.

5          MR. TURNER:  Your Honor, it's important that there

6    be some proportionality.

7          THE COURT:  Then you suggest a proportionality.

8          MR. TURNER:  Yes.  What we've proposed, Your

9    Honor, is that the underwriter defendants produce what

10   they've already produced in cases that involve the same

11   Countrywide securitizations as they are being sued on here

12   and that would result in --

13         THE COURT:  That is not reasonable either.  You

14   know and the court knows how this took place over this short

15   period of time, and just doing this particular -- these

16   particular ones, asking the question about these particular

17   offerings is probably not going to result in their getting

18   anything.

19         MR. TURNER:  Right.  One of the issues that we

20   face, Your Honor, is that for many of the actions that

21   involve one or more Countrywide deals, they also involve

22   many other deals that involve other originators' loans --

23         THE COURT:  Oh, I know that.

24         MR. TURNER:  Other defendants.

25         THE COURT:  I know that.

```
 1          MR. TURNER:  So the problem we face is if we are

 2   going to go to those cases and just turn over everything

 3   we've produced in those cases, we're turning over documents

 4   relating to other originators, other deals that are

 5   completely irrelevant.

 6          THE COURT:  Oh, no, no, no.  I know they are.  But

 7   here's the problem:  That's superficially something we can

 8   generally agree about, that there are other originators.

 9   But the way this business was conducted, it may not make any

10   difference that there was more than one originator or there

11   were other originators.  These were all bundled together.

12   And in some of them, certainly, Countrywide's role was

13   sometimes an originator and sometimes varying other roles.

14          MR. TURNER:  Understood, Your Honor.

15          We have a lot of different cases, a lot of

16   different scenarios, but it includes situations where, for

17   example, Countrywide was not even the sponsor.  You have

18   cases where some Countrywide loans are in a pool that gets

19   securitized --

20          THE COURT:  I know.

21          MR. TURNER:  -- by another financial sponsor.  We

22   happened to be underwriters --

23          THE COURT:  Obviously, those are not part of what

24   they asked for.

25          MR. TURNER:  Well, that is squarely what they've
```

1  asked for, Your Honor.  They've asked for, my understanding

2  is, anything involving Countrywide loans.  Even if it were

3  limited to cases involving Countrywide securitizations, we

4  have a lot of cases, for example, where there may only be

5  one Countrywide securitization and 20 other deals sponsored

6  by other institutions.

7          THE COURT:  Well, those 20 other deals obviously

8  don't have to be included.

9          MR. TURNER:  And the issue that we face, Your

10 Honor, which is what I'm getting to is there is no easy way,

11 in fact, no way at all for us to slice and dice our prior

12 productions and figure out what relates to Countrywide, what

13 relates --

14         THE COURT:  It's a world we didn't make.

15         MR. TURNER:  Exactly, Your Honor.  So it's very

16 burdensome for us to have to go back to those productions

17 and sort through them and find out what documents might

18 relate to Countrywide and segregate them from the documents

19 that don't relate to Countrywide.

20         The best thing that we believe we can do, Your

21 Honor, is go to the source of the documents, the original

22 source of the documents which have all been preserved.  We

23 know the people who worked on these deals.  We know the

24 people who were involved in Countrywide securitizations.  We

25 will go to their files and we will do it promptly and we

1    will find the documents that are relevant to this case.

2           Going back to those prior productions is not going

3    to give us a head start.  It's going to slow us down and we

4    are going to be in a situation where we have a lot of

5    additional documents that are not relevant.  They are going

6    to burden the parties because we will need, as part of our

7    professional responsibilities in putting forward witnesses

8    for depositions, to read those documents and figure out if

9    anything in them is relevant to our case.

10          We think that is going to slow the schedule down,

11   Your Honor, and we think it is better if we go to the

12   original sources of the documents.  That is what we

13   proposed.

14          The plaintiffs last week served on us document

15   requests, 82 requests, Your Honor.  They are asking for

16   everything else anyway.  So it is not as if the prior

17   productions that they've asked for are going to serve as a

18   substitute.

19          THE COURT:  In that sentence, what is "everything

20   else"?

21          MR. TURNER:  They are asking for everything

22   relating to these deals, basically everything relating to

23   anything our clients did that touched Countrywide.

24          They are even asking in this document for exactly

25   what they are requesting today, saying even if they lose on

1   this issue today they are still requesting these documents

2   here.  So it's a very broad set of requests.

3        My client was an underwriter on two

4   securitizations, was involved for a matter of a few weeks on

5   each of them, has a very minor role.  The principal

6   defendants, the Countrywide defendants that sponsored the

7   deal, they are in the room.  Their documents are the most

8   important documents in this case, as well as the plaintiffs'

9   documents, and they've made agreements that going to prior

10  productions is the best way to move that forward.

11       We don't think that for the underwriter defendants

12  that are secondary defendants, certainly will need to

13  produce documents and will do so quickly, but throwing in

14  all our prior productions just because the plaintiffs want

15  some database of things to look through we don't think is

16  efficient.

17       THE COURT:  Now, this is what I understand,

18  distilled from what you just said:  Your position is --

19  representing Deutsche Bank -- that you will show him

20  anything you have with respect to the securities at issue in

21  the case before us.

22       MR. TURNER:  Yes.

23       THE COURT:  And nothing else.

24       MR. TURNER:  That's right.

25       THE COURT:  Well, Deutsche Bank had a much bigger

1   relationship with Countrywide than that.

2          MR. TURNER:  And certainly to the extent the

3   plaintiff makes targeted requests for other aspects of those

4   interactions, we believe that is valid.  But to seek

5   productions that could encompass on a deal-by-deal basis

6   dozens of other securitizations, we do not believe --

7          THE COURT:  No, no.  That is not what the court

8   would order.

9          But would you, for example, object to their taking

10  depositions of people from Deutsche Bank about what they

11  knew about Countrywide?

12         MR. TURNER:  No, not at all.

13         THE COURT:  Well, now, you are going to have to

14  make it a little clearer to me what it is you want from the

15  plaintiffs' side.

16         Ah, please.

17         MR. GRAIS:  May I address this briefly?

18         THE COURT:  By all means.

19         MR. GRAIS:  Your Honor, my firm is counsel to the

20  plaintiff in a case in which UBS was sued as an underwriter

21  of four Countrywide-sponsored securitizations.  I've

22  personally reviewed UBS's document production to choose

23  deposition exhibits.  The documents about particular

24  securitizations typically include some that truly relate

25  only to those securitizations, for example, correspondence

1    with the due diligence contractors about --

2              THE COURT:  Of course.

3              MR. GRAIS:  -- the loans.

4              THE COURT:  Of course.

5              MR. GRAIS:  They also all include information

6    about Countrywide in general and its implications for UBS's

7    due diligence practices.

8              THE COURT:  I am sure that that's true.

9              MR. GRAIS:  So from the FDIC's perspective, and

10   the FDIC is not one of the larger plaintiffs here by any

11   means, we have no view on Mr. Turner's statement about deals

12   in which Countrywide loans are only part of the collateral.

13             THE COURT:  Oh, I know.  I know.

14             MR. GRAIS:  But when Deutsche Bank or UBS or other

15   underwriters underwrote CWALT or CWHL deals, there are many

16   documents that I've personally seen in the files of those --

17   of UBS as an example of those underwriters that are very

18   relevant, for example, documents that talk about the impact

19   of Countrywide's origination practices on the desirable

20   scope of due diligence.

21             THE COURT:  I'm positive they exist.

22             MR. GRAIS:  And so for the FDIC's perspective, we

23   would not necessarily object to excluding documents about

24   deals in which Countrywide loans were present, but for

25   Countrywide-sponsored deals, we see no justification for

1  limiting them to ones that are involved in these cases

2  because everybody who has reviewed those documents I think

3  would agree that they have import across all Countrywide

4  securitizations --

5          THE COURT:  They do.

6          MR. GRAIS:  -- underwritten by that.

7          THE COURT:  They do.

8          MR. GRAIS:  Thank you, Your Honor.

9          MR. OLIVAR:  Your Honor, we agree with Mr. Grais.

10  What we are looking for is Countrywide-sponsored deals, not

11  deals where Countrywide is a small piece because they

12  originated some of the loans.

13          Your Honor hit the nail on the head.  We are

14  looking for documents showing Deutsche Bank's, JP Morgan's

15  and UBS's relationship with Countrywide, their witnesses'

16  knowledge of Countrywide's practices and their prior

17  production as it relates to Countrywide as a sponsor.

18          If they want to give us 8 million pages if that's

19  easiest, fine.  If they want to slice and dice, let's do it

20  quickly and get these documents because we are trying to get

21  depositions done by January.  We are facing the argument

22  that they -- we had a minor role, unless you want to look at

23  these two deals.  That is just not true.  Deutsche Bank had

24  a significant relationship with Countrywide.  So did UBS.

25  So did JP Morgan.

```
 1          THE COURT:  Indeed.

 2          MR. OLIVAR:  We'd like to get their documents up

 3    front, Your Honor, so we are asking you to order them to

 4    produce their prior productions relating to Countrywide as

 5    sponsor and then the transcripts of their witnesses who

 6    testified on that issue.

 7          THE COURT:  Let's do it again, please.

 8          The sponsored documents that he was just referring

 9    to, what about that?

10          MR. TURNER:  The description that I gave Your

11    Honor before of the eight and a half million pages of

12    documents.  That is the Countrywide sponsored deals, the

13    cases that involve Countrywide-sponsored deals.

14          So producing those documents is going to tell us a

15    lot about those other deals.  We don't think it's going to

16    tell us a lot -- and this is a large volume of documents to

17    deal with -- about either these specific deals or the

18    general interactions between the underwriters and

19    Countrywide.

20          The plaintiffs have made requests for documents

21    relating to those general actions -- interactions and we

22    will respond to them.  They served those requests on us last

23    week, Your Honor.

24          But as I said before, if we are to be forced to

25    produce all of those previous productions, we are going to
```

1   introduce a lot of materials involving other originators,
2   other deals sponsored by other institutions.
3           THE COURT:  Well, that's having to do with
4   litigation.
5           MR. TURNER:  I'm sorry, Your Honor?
6           THE COURT:  Those are documents that were produced
7   in litigation.
8           MR. TURNER:  Exactly, Your Honor.  But, for
9   example, relating to deals sponsored by Option One or
10  Fremont or --
11          THE COURT:  I know that.
12          MR. TURNER:  -- a host of other institutions.
13          THE COURT:  And, obviously, that's not what you
14  were talking about, is it?
15          MR. OLIVAR:  That's right, Your Honor.  We are
16  primarily interested in Countrywide's -- or only interested
17  in Countrywide-sponsored documents.
18          THE COURT:  Well, you have a problem.  It's a
19  practical problem.  You are going to have to work it out in
20  writing.  You don't want eight and a half million documents.
21          MR. OLIVAR:  Your Honor, we are getting 50 million
22  pages from Countrywide, so 8 million from JP Morgan, UBS and
23  Countrywide --
24          THE COURT:  Well, some of those pages from
25  Countrywide are going to refer to Deutsche Bank.

```
 1              MR. OLIVAR:  One would hope, Your Honor, although
 2    we would like to get Deutsche Bank documents too.
 3              THE COURT:  You are going to have to define it
 4    more closely than you are doing.
 5              MR. OLIVAR:  All right.  Well, let's get a list of
 6    cases from Mr. Turner and his colleagues.
 7              THE COURT:  Well, the cases probably have
 8    Countrywide loans in them, originated with Countrywide.
 9              MR. OLIVAR:  But as Countrywide has done --
10              THE COURT:  You don't want those.
11              MR. OLIVAR:  Right, Your Honor.  We would like
12    them to identify the cases that involve Countrywide loans
13    predominantly and Countrywide sponsored.  We've asked them
14    to do that and they've refused to do that.
15              THE COURT:  No.  If you take it loan by loan, it's
16    going to produce a lot of irrelevant material.
17              MR. OLIVAR:  To be clear, Your Honor, we are
18    looking for cases that principally involve Countrywide.
19    We've asked for that information.
20              THE COURT:  There is no such thing as a case that
21    principally involves Countrywide.  Believe me when I tell
22    you this.  I've been at this for years.  And if that's your
23    definition, almost anything can fall into it.
24              MR. OLIVAR:  Whatever definition gets us the
25    Countrywide --
```

```
 1              THE COURT:  Sponsored.

 2              MR. OLIVAR:  -- sponsored documents, that's what

 3    we want, Your Honor.  We'd like defendants to propose

 4    something or we can propose something --

 5              THE COURT:  Why don't you propose something.

 6              MR. OLIVAR:  We will, that will accomplish that.

 7              THE COURT:  Well, yes.  Let's not act as if we are

 8    dealing with a company that didn't have a lot of different

 9    roles.  You cannot ask for something that relates to

10    Countrywide.  You are going to get everything in the world.

11    You are going to have to say specifically what it is you

12    want.  If you want all the deposition transcripts from all

13    of the prior litigation, that's unreasonable.

14              MR. OLIVAR:  Your Honor, we heard there were only

15    six.

16              THE COURT:  Well, I don't know.  If there are only

17    six, they can offer them to you.

18              MR. TURNER:  We are prepared to have a discussion

19    with Mr. Olivar and continue it --

20              THE COURT:  You are going to have to go back to it

21    again.  Countrywide was an originator.  It bought loans.  It

22    was a sponsor of all the things we are talking about in this

23    litigation.  It had relationships with Fannie and Freddie.

24    I could go on endlessly about all of the things that

25    Countrywide did in its various -- wearing its various hats.
```

You don't want all of that.

MR. OLIVAR:  No, Your Honor.  I think we want prior productions in cases where the majority of the deals were Countrywide sponsored.

THE COURT:  You can believe me as the judge in the case that the majority of something having to do with Countrywide is going to get you nothing.  I mean, it will get you either something you could never handle or it will produce for you a quarrel about what does majority mean.

MR. OLIVAR:  All right.

THE COURT:  Hear me out for just a minute.

MR. OLIVAR:  Yes, Your Honor.

THE COURT:  I just told you only three or four things they did.  I could go on and on and on, on all of the things that Countrywide was involved in.  But predominantly you have to look at originating, at sponsoring, at selling loans that they bought from other people.  This is a very big subject.

MR. OLIVAR:  Yes, Your Honor.  We --

THE COURT:  And you can't have it all.

MR. OLIVAR:  Understood, Your Honor.  We will get from defendants the identification of the Countrywide depositions they've given and the cases they've been in, and then I'm hopeful we can work something concrete out quickly.

THE COURT:  Well, if you think -- if you think

1    that by making a general request such as you have

2    alternately talked about here, you are going to get what you

3    want, you are wrong.  You are not.  You are going to have to

4    specify in what function Countrywide was acting and what it

5    is you want.

6           He's offered you nothing and you've asked for the

7    whole world.  Now, in between those two extremes there is

8    something.

9           MR. OLIVAR:  Yes, Your Honor.  We will focus.

10          THE COURT:  It's a matter of definition.  And

11   we're -- you know, unfortunately, the way I look at it may

12   be different from the way you look at it.  But that's

13   because I know precisely in how many different ways

14   Countrywide was involved in the entire mortgage

15   securitization process.  And that's what you are going to

16   have to do.  You are going to have to fix upon what it is

17   you want.

18          MR. OLIVAR:  Okay.  As I said, Your Honor, we will

19   focus on Countrywide-sponsored deals.  We will get the

20   information on the cases and the witnesses.

21          THE COURT:  Well, we will see.  We will see if you

22   do.  Now, that's not going to narrow this very much, but at

23   least we might be talking about the same thing.  You do not

24   want every single piece of paper having to do with where

25   Countrywide went out and bought mortgages and put them

1    together with some of the mortgages that they generated and

2    then dealt with other people about that.  Do you?

3             MR. OLIVAR:  Your Honor, if it's a Countrywide

4    deal, I believe we do.  Representations were made about

5    those loans.

6             THE COURT:  You are going to be very, very

7    burdened for a long, long time.

8             MR. OLIVAR:  All right.  Your Honor, we will work

9    with defendants.  We are hoping this does not hold up entry

10   of the schedule.  We would like an expedited procedure.

11            THE COURT:  I hope the words are not getting in

12   our way.  I'm telling you that you have to specify in what

13   kind of documents you want depending on what role

14   Countrywide was playing.

15            MR. OLIVAR:  Thank you, Your Honor.  We will do

16   that.

17            THE COURT:  Let me just take one more minute.

18   They would bundle loans together; some of them were theirs,

19   some loans they bought from other people; take contracts

20   that indemnified them, sell part of those loans to Fannie

21   and Freddie maybe, if they could.  Most of the low income

22   ones would or would not qualify.

23            Then they would take their own loans and sell them

24   to other people and those other people would sell them to

25   somebody else.  This is more complicated than you are making

1   it, by far.  I don't know if I'm making this clear to you.

2           MR. OLIVAR:  I understand the various ways in

3   which Countrywide --

4           THE COURT:  And you don't want all that

5   information.

6           MR. OLIVAR:  No, we may not.  What we are looking

7   for is what Your Honor described as the relationship and

8   knowledge these three banks had of Countrywide in relevant

9   areas, and that is not restricted to these deals.

10          THE COURT:  Well, you are going to have to decide

11  what relevant areas are.  That's not because I'm narrowing

12  what you can ask for.  It's because you couldn't deal with

13  what you are generally specifying.

14          MR. OLIVAR:  Understood, Your Honor.  We are

15  hopeful we can get something substantial up front so we

16  don't have to go through --

17          THE COURT:  They don't want to do that.  They

18  don't want to do what you are asking.  And they are

19  reasonably correct about what they are saying.  Until you

20  can say what it is you want and -- for example, I know that

21  around the table, the other plaintiffs, some of them, know

22  exactly what I'm talking about.  It has to get narrowed or

23  you can't deal with it.

24          Now, what good the deposition transcripts in cases

25  against Countrywide would do you, I'm not able to say.  I

 1   don't know.

 2          MR. OLIVAR:  Your Honor, oftentimes we may not

 3   need to depose a witness if we get prior testimony that can

 4   be used in this case or we can take a shorter deposition of

 5   a witness.

 6          THE COURT:  I don't know.  They don't.

 7          MR. OLIVAR:  For example, Countrywide is producing

 8   over 100 transcripts of prior depositions I believe in the

 9   hope that we won't redepose those people.

10          THE COURT:  Well, I am over discussing this with

11   you.  You've got to make a more specific request.

12          MR. OLIVAR:  Thank you, Your Honor.

13          THE COURT:  You certainly don't want everything

14   you are asking for.

15          MR. TURNER:  Thank you, Your Honor.

16          THE COURT:  All right.  Now you've got to go back

17   to the drawing board and work this out.

18          MR. TURNER:  We will.  We will work it out,

19   Your Honor.

20          THE COURT:  I'm not just doing this because that's

21   what a magistrate judge would do.  I'm telling you I

22   understand what you say about it being too general, and your

23   specific proposal will produce nothing for them.

24          MR. TURNER:  For my client, Deutsche Bank, it

25   produces nothing.  For UBS, it produces 700,000 pages, I

1    believe.

2              THE COURT:  Well, Deutsche Bank, their knowledge

3    about Countrywide and their offerings is not focused on what

4    would appear on seven or eight sheets of paper.

5    Deutsche Bank knew plenty about Countrywide.

6              MR. TURNER:  I understand, Your Honor.  And I'm

7    simply saying that those kinds of requests we believe we can

8    deal with outside the context of looking at prior

9    productions in other places.

10             But we are certainly happy to continue the

11   discussion with the plaintiff, and I hope that we can,

12   through talking about some specifics --

13             THE COURT:  I would agree with you that it's a

14   very big topic --

15             MR. TURNER:  It is.

16             THE COURT:  -- considering that I am looking now

17   at CDOs.  This is very complicated.  And I don't mean by

18   that that it's so complicated you can't take discovery about

19   it.  I understand perfectly.  But it is not practical to

20   cover Countrywide's tracks in the whole securitization

21   process.  This company was deeply involved in a short -- a

22   relatively short time span in just about every aspect of it

23   and you are just going to have to accommodate to that.

24             So, you are going to have to work this out within

25   a week.

```
 1              MR. TURNER:  We will do so, Your Honor.

 2              THE COURT:  And don't let it stop the discovery.

 3              MR. TURNER:  We won't, Your Honor.

 4              THE COURT:  All right.

 5              MR. TURNER:  Thank you.

 6              THE COURT:  Now . . .

 7              MR. OLIVAR:  Your Honor, if I may ask a question,

 8     in what form would you like us to report back to the court

 9     within a week?

10              THE COURT:  I think that we should have a

11     telephone call and I think you should tell me that you have

12     asked for specific topics and you should tell me what they

13     are.

14              MR. OLIVAR:  Yes, Your Honor.

15              THE COURT:  It's not -- once again, it is not

16     because I'm trying to make it hard on you.  I'm trying to

17     really make it easy for you, easier.  I think they could

18     produce just about anything you asked for, but it probably

19     wouldn't be useful.

20              Sit down as a plaintiff and say to yourself:  What

21     did Countrywide do and what part of what they did do I want

22     to look at or see?  It's not, hopefully, a dartboard.  And

23     probably the discovery of the Deutsche Bank people would be

24     more fruitful.  But I'm not confining you to any particular

25     thing.
```

| | |
|---|---|
| 1 | Now, Mr. Grais, I believe you do understand what I |
| 2 | just said? |
| 3 | MR. GRAIS:  Yes, I think I do, Your Honor. |
| 4 | THE COURT:  All right.  Well, then perhaps you can |
| 5 | participate in specifying -- |
| 6 | MR. GRAIS:  Yes, of course. |
| 7 | THE COURT:  -- what it is you want because you are |
| 8 | entitled to a very robust discovery as to the underwriters. |
| 9 | MR. GRAIS:  Yes.  I will be happy to join |
| 10 | Mr. Olivar and counsel for the defendants. |
| 11 | THE COURT:  All right.  Now, the schedule you will |
| 12 | give me.  Just take what you understand to be the schedule |
| 13 | now and resubmit it. |
| 14 | MR. PASTUSZENSKI:  Yes, Your Honor. |
| 15 | THE COURT:  As to the telephone call, we can have |
| 16 | the telephone call, let's say, next Thursday about 1:30. |
| 17 | Now, please don't say to me we just can't work it |
| 18 | out.  You do it.  Because I'm going to say to you back:  You |
| 19 | do it.  I cannot describe to you any more than I have just |
| 20 | done how monumental this body of subject matter is.  It's |
| 21 | very big. |
| 22 | One last word, I would seriously doubt myself |
| 23 | after Deutsche Bank looked into whether they were ever going |
| 24 | to have any relationship with Countrywide, that lengthy |
| 25 | conversations that would do you a lot of good ever took |

1  place.  That's not the way this market went.  That's not the

2  way relationships went.

3           So what you want, you are probably going to find

4  out not as to specific offerings but for specific kinds of

5  offerings.  You know that you are not talking about one kind

6  of loan.  I know I'm making myself clear here.  That's why

7  they have those letters.

8           Countrywide had 300 or something kinds of loan

9  that they were offering and they weren't all securitized.

10  So you want to know what Deutsche Bank knew about the ones

11  they were offering to put on the market, not the loans, but

12  the offerings.

13           All right.  Now, is there anything else?

14           MR. GREENWALD:  Yes, Your Honor.

15           THE COURT:  Please.

16           MR. GREENWALD:  Thank you.  On the proposed

17  schedule that the parties have agreed to that

18  Mr. Pastuszenski is going to resubmit to the court, the

19  parties were supposed to submit to the court by April 19th a

20  proposed protective order, and the parties have been

21  negotiating and have reached an agreement on all but two

22  issues.

23           THE COURT:  Tell me what they are.

24           MR. GREENWALD:  The two issues -- the first one

25  has to do with privilege for the prior productions.  As the

1   court recalls, Countrywide is going to make their prior

2   productions available.

3        THE COURT:  Yes.

4        MR. GREENWALD:  What they proposed -- at first

5   they proposed they wouldn't give us any privilege logs.

6   Then they said they would give us privilege logs only for

7   the prior productions where they actually prepared privilege

8   logs.  And in a few of the cases that they are giving us the

9   prior productions, they never prepared privilege logs and

10  those cases have settled.  We've agreed that they don't need

11  to go back and recreate privilege logs for cases that have

12  settled.

13       But they've also asked that in the protective

14  order.  We agree and the court ordered us that we may not

15  challenge any designation of privilege in these prior

16  productions under any circumstances, including clawbacks.

17  So, they could send us a letter tomorrow saying we want this

18  document back and it's privileged, and according to their

19  proposal, we have no remedy to go to the court and say,

20  Judge, we believe that this is actually not privileged, we'd

21  like in-camera review.

22       And we are not talking about documents where in

23  those prior cases there's been adjudication of privilege.

24  We don't want to relitigate anything.  And probably there is

25  nothing.  But we just want when we get the privilege log, if

```
 1   there is a document that seems like it's not privileged
 2   based on the entry of the log and it is important to
 3   plaintiffs' cases here, an ability, like in any case, to
 4   seek redress from the court.  And that's issue number one.
 5          Issue number two is also with the prior
 6   productions and the designation of confidentiality.  What
 7   they propose is if a party wants to challenge the
 8   designation of confidentiality, they would propose that it
 9   be governed in this court by the confidentiality agreement,
10   the protective order in those prior cases.
11          So they would say, Judge, if there is a dispute --
12   which I hope doesn't happen and we don't intend to bring
13   disputes over confidentiality -- but if there is a dispute,
14   they say, you, Judge, have to follow Justice Branston's
15   protective order, you don't get to follow your own
16   protective order, and we think that's wrong.
17          We weren't a party to Justice Branston's
18   protective order and we just think it will be clearer.
19   Plus, some of the documents will have been produced --
20          THE COURT:  I wasn't either.
21          MR. GREENWALD:  We agree.  So we just think it
22   should be any challenges -- which we hope won't happen at
23   all -- but to the extent there are challenges will be
24   governed by this court's protective order.  Those are the
25   only two issues that remain and we think --
```

```
 1              THE COURT:  I can't resolve that now.
 2              MR. GREENWALD:  Okay.  So how would you --
 3              THE COURT:  Now, there is one thing I want to tell
 4    you.
 5              MR. GREENWALD:  Yes, Judge.
 6              THE COURT:  Never, never is this court ever going
 7    to review thousands of documents, hundreds of documents or
 8    even tens of documents.  So what you are talking about, if
 9    it revolves around less than ten, I'll read them.  I'm not
10    going to do it for all of your documents.
11              Now, you can't offer me an assurance that I would
12    rely on that it won't happen because it will happen.  You
13    will leave the courtroom and then all of the associates in
14    these firms will start fighting with each other and I know
15    what that will lead to.
16              So if you have a major document, something that
17    really makes all the difference, then the court would, no
18    matter what you wrote down, look at it.  But I am not acting
19    as a backstop for every other court in the country.  And you
20    can't offer me an assurance that would make me happy on this
21    subject.
22              MR. GREENWALD:  That's understood, Your Honor.  We
23    heard you loud and clear at the first MDL conference.  You
24    are an issues judge.  We are not bringing picayune disputes
25    to the court.
```

```
1          THE COURT:  I'm not giving it to a magistrate

2    because the magistrate would have to know all we know and

3    read all the orders and understand the situation, and I

4    can't do that.  I can't explain that to a magistrate.

5          MR. GREENWALD:  All we need to assure our clients

6    is if there is some very important documents that does not

7    appear to be privileged and is withheld, we have some remedy

8    and we cannot agree that we will have no remedy.  So we

9    don't plan to bring anything.  And I can give you the

10   assurance because you've told us now twice not to bring it

11   to the court.

12         THE COURT:  If you come in here and you say to me,

13   well, it only turned out to be 50, and would you look at

14   them, I'm going to say no.

15         MR. GREENWALD:  That's understood, completely

16   understood, Judge.  Yeah.  So we understand you can't

17   resolve that.  We will continue to negotiate with defendants

18   to get that finalized.

19         The last issue is:  Under the parties' proposed

20   schedule, today was the deadline for the parties to agree to

21   the extent possible on a sampling methodology.  Early in the

22   week, we sent to defendants a proposed sampling methodology

23   and we've heard nothing.  We hope it's because we are

24   reaching agreement.

25         But we just would like -- because until we get the
```

1    protective order entered and until we get a sampling

2    methodology agreed to, we can't start that re-underwriting

3    process, getting the loan files and starting the

4    re-underwriting process.  It's very important that we hit

5    those dates.

6              THE COURT:  All right.  Please.

7              MR. PASTUSZENSKI:  Brian Pastuszenski, Goodwin &

8    Proctor, for the Countrywide cases in all cases other than

9    MassMutual.

10             Your Honor, if I may, let me address this last

11   point first, the sampling point.

12             It is correct that sometime this week we did

13   receive two proposals from plaintiffs, one from each

14   separate plaintiff group, specific sample in that case.  And

15   then we also received, I think, on Wednesday evening this

16   week a proposal for a broad sample across these cases.

17             We immediately forwarded those to our expert, both

18   our consultants and our outside expert to look at.  We are

19   moving as rapidly as possible, Your Honor.  These proposals

20   involve implicit judgment calls by the plaintiffs and

21   conclusions and assumptions that require an assessment of

22   the statistical appropriateness of what they are proposing.

23   We are reviewing that and we will get back to the plaintiffs

24   as soon as we can.  I don't think it's unreasonable for us

25   to take a few days to respond.

```
 1            THE COURT:  That's right.

 2            MR. PASTUSZENSKI:  And we will move as quickly as

 3    we can on that.

 4            Secondly, Your Honor, if I may very briefly

 5    respond on this question of privilege.  I think it's

 6    important for us not to lose context of what we are talking

 7    about here.  In order to facilitate moving these cases more

 8    expeditiously, we agreed to produce something in the order

 9    of 50 million pages of documents produced in prior actions,

10    regardless of whether those documents and all of the

11    transcripts that we agreed to make available immediately

12    involve issues that are even relevant to this case.  For

13    instance, the action that has now been settled in the trial

14    court in New York state, the MBIA case.  That is a case --

15            THE COURT:  Yes, I know.

16            MR. PASTUSZENSKI:  That is not even a case

17    involving a purchaser of mortgage-backed securities.  It's

18    an insurer.  It doesn't even involve disclosures.  It

19    involves insurance contracts.  And yet, we agreed to make

20    those available, 50 million pages' worth.

21            What the plaintiffs now want to be able to do is

22    in a case like MBIA or in other cases where privilege logs

23    have been produced or are being produced and where the

24    plaintiffs in those cases, like plaintiffs in any case, have

25    the ability -- and MBIA did actually vigorously challenge
```

1   privilege designations.  In fact, even after the summary

2   judgment motion in MBIA was filed, the plaintiffs were

3   challenging privilege designations.

4           THE COURT:  I know.

5           MR. PASTUSZENSKI:  And no smoking guns ever came

6   out.  Plaintiffs want now to be able to go back and retread

7   all of that ground or tread it in parallel duplicatively

8   with the plaintiffs in these cases.

9           THE COURT:  No.

10          MR. PASTUSZENSKI:  It makes no sense.

11          THE COURT:  You are not going to do that.

12          MR. PASTUSZENSKI:  Your Honor, that's defendants'

13  position.  We compromised with plaintiffs and agreed to

14  produce a huge amount of material, and all we are suggesting

15  is the parties and the court best able to assess whether if

16  challenged privilege calls were appropriate are the parties

17  and the courts in those cases.  And that's really part of

18  the efficiency here of making all of this stuff available up

19  front.

20          THE COURT:  I know that.  I understand that

21  perfectly.

22          MR. PASTUSZENSKI:  And Your Honor said something

23  at one of the prior conferences, which for better or worse

24  resonated with me, and that is that these cases from here

25  forward to the extent that they have already cost

```
 1   Countrywide a fortune, are going to cost Countrywide a
 2   fortune in dealing with all of the discovery that has to
 3   happen.
 4           What plaintiffs are proposing would multiply that
 5   fortune by multiples.
 6           THE COURT:  We are not going to do that.
 7           MR. PASTUSZENSKI:  Your Honor, that would
 8   certainly be what I think the reasonable approach is.
 9           THE COURT:  Look, if you think that I am going to
10   take a hundred documents from the MBIA case -- which I
11   follow closely every day just as we follow all the other
12   ones.  If you think I'm going to look at those documents,
13   you are just totally wrong, and I'm not going to let anybody
14   else look at them either, the privilege ones.
15           On the other hand, if there were a document that
16   was so important that you felt you were really -- you had to
17   have that document -- now I'm talking about documents that
18   occur less than one in every -- how many?  You know, where
19   you find one which is really the smoking gun.  I would be
20   willing to look at that and it wouldn't take me as long as
21   it would take some magistrate judge and I could do it and
22   you could agree that that one is important.
23           But I'm not going to look -- I'm not going to sit
24   there and rule on those.  I'm not going to rule on the
25   privileges from other cases.
```

1          MR. PASTUSZENSKI:  And, Your Honor, the chance

2    that there is a smoking gun out there is exceedingly

3    remote --

4          THE COURT:  Now I would say so.

5          MR. PASTUSZENSKI:  -- particularly given the fact

6    that Mr. Grais' firm, Grais & Ellsworth, is counsel in one

7    of those cases, *FHLB Seattle*, and the Quinn Emanuel firm is

8    counsel or was counsel before it settled in the *MBIA* case,

9    and so one would think that those firms and those teams

10   would have pursued the privilege issues as vigorously as

11   they would repursue them duplicatively here.

12          I understand what Your Honor is saying.  We will

13   speak with the plaintiffs about trying to implement what

14   Your Honor is saying in language to go into the order, but I

15   simply wanted to address the extraordinary cost and

16   unnecessary cost of what plaintiffs proposed.

17          THE COURT:  Well, you know all they are doing is

18   making it hurt as much as they can.

19          MR. PASTUSZENSKI:  Well, Your Honor, it certainly

20   would hurt.

21          THE COURT:  I know.  But they have their position

22   to protect too.

23          MR. PASTUSZENSKI:  They do.  I understand that,

24   Your Honor.  But I think the fact that in two of these cases

25   the same law firms that were involved, they are protected,

| | |
|---|---|
| 1 | Your Honor.  The plaintiffs in these cases have in the first |
| 2 | instance as much incentive as these plaintiffs do.  If there |
| 3 | is something that is wildly wrong from a privilege call, the |
| 4 | plaintiffs in these cases have as much incentive to call us |
| 5 | on that or call the parties in the case on that -- |
| 6 | THE COURT:  They certainly do. |
| 7 | MR. PASTUSZENSKI:  -- and have the judges in those |
| 8 | cases who are best positioned to resolve this, rather than |
| 9 | burdening us or Your Honor again with this issue. |
| 10 | THE COURT:  Well, all we need in here is to start |
| 11 | reviewing everybody else's discovery. |
| 12 | MR. PASTUSZENSKI:  Understood, Your Honor. |
| 13 | Your Honor -- |
| 14 | THE COURT:  That never would happen. |
| 15 | MR. PASTUSZENSKI:  Your Honor, we will resubmit to |
| 16 | you the schedule. |
| 17 | The one thing I wanted to note on the record is |
| 18 | that while there obviously will be a tremendous amount of |
| 19 | time spent by plaintiffs apparently re-underwriting the loan |
| 20 | files and we will be required to spend a lot of time |
| 21 | reviewing what they did, I just want to make sure the record |
| 22 | is correct that we are not conceding that re-underwriting |
| 23 | loans years, many years after the fact is something that is |
| 24 | inherently reliable or free from challenge. |
| 25 | THE COURT:  Oh, I know that.  I know that. |

1          MR. PASTUSZENSKI:  These re-underwriting exercises

2     involve at many years after the fact a series of subjective

3     judgments by whomever is doing it.  And I just want the

4     record to reflect that we are not conceding that that is a

5     reliable scientifically or otherwise exercise, not that Your

6     Honor would assume that, but --

7          THE COURT:  You have not conceded a thing.

8          MR. PASTUSZENSKI:  Thank you, Your Honor.

9          MR. GREENWALD:  Your Honor, just briefly.  We are

10    not attempting to create any costs for them.  In fact, we

11    believe by agreeing to take the prior productions rather

12    than productions designed specifically for these cases, we

13    are saving them money, saving everyone time, and we want to

14    do this expeditiously for ourselves as well as for them.

15         All we were asking was for the ability if there is

16    that very important document to come to this court.  I said

17    very clearly we do not want to relitigate anything decided

18    in those other cases.

19         THE COURT:  Well, you see, those privilege logs

20    were probably not litigated at all.

21         MR. GREENWALD:  I believe in *MBIA vs. Countrywide*,

22    they were.

23         THE COURT:  Oh, they were in *MBIA*.

24         MR. GREENWALD:  And we are not -- any ruling that

25    they obtained, we won't relitigate and submit to this court.

1    In fact, we understand, we will submit -- likely, we will

2    submit nothing to this court.

3              THE COURT:  Fine.

4              MR. GREENWALD:  We just want the ability if there

5    is that very important document that has been withheld, we

6    believe improperly, to come to Your Honor, like in any other

7    case, and we understand the court's time --

8              THE COURT:  This is not like any other case.

9              MR. GREENWALD:  Of course.

10             THE COURT:  It is not like anything that -- it is

11   not like anything that most judges have ever seen.

12             MR. GREENWALD:  That's true.  And we have the

13   benefit of a judge who knows this case and knows this

14   defendant very well.

15             THE COURT:  All I want to do is do something

16   that's fair about the discovery.  The principal battles up

17   until now have been legal ones and so I have no reason to

18   restrict you, but on the other hand, I do have to consider

19   how big this is.

20             MR. GREENWALD:  We understand, Judge, and we want

21   to make this as efficient and expedited as possible because

22   we agree with the court that this needs to get done quickly

23   and certainly by the end of 2014, if not earlier.  So that's

24   our goal as well, Judge.  We would ask that there maybe be a

25   date by which the defendants get back to us on the sampling

 1   proposal.

 2              THE COURT:  Oh, now, really.  He's going to get

 3   back to you right away.

 4              MR. GREENWALD:  Very good, Judge.  Those are the

 5   only issues that plaintiffs had today.

 6              THE COURT:  Now, does anyone else want to be heard

 7   on anything?

 8              Now, we are going to resolve the discovery

 9   disputes that are outstanding, but you don't want -- since

10   we've talked this over again, you don't want to be in a

11   position where you get a ruling from somebody, not in this

12   situation.  They don't want to ask for a ruling.  You don't

13   want to ask for a ruling.  But if that's what you turn out

14   to want to have done, I'm your person.  I will do it, but

15   you won't like it.

16              I'm also aware of the fact, and I hope you have

17   been -- now, I'm saying this deliberately to you -- that

18   from the standpoint of discovery, the court notes that

19   nobody has ever asked anybody about the documents, the

20   actual securitization documents that were signed.

21              The only thing we've been looking at are the

22   generalities and anybody who has ever read an offering, and

23   I have, knows that the books are about this high

24   (indicating).  And nobody has ever asked anybody where it

25   has been brought to my attention what you thought about

```
 1   those documents if you were a big company, who read them,

 2   what did they think about that?

 3            I suspect you are going to find out that there was

 4   very little reading of those documents and that with respect

 5   to the underwriters, they are going to be relying on the

 6   fact that the underwriter had different documents, summaries

 7   of what was being offered.  We have not looked at those yet,

 8   have we?  The firm sheets?

 9            MR. TURNER:  I believe that would be the subject

10   of discovery.  We haven't discussed that.

11            THE COURT:  Well, I have not seen anything about

12   that.  So there is quite a lot of ground to cover.

13            Thank you for coming in.  And you will submit the

14   schedule.

15            MR. PASTUSZENSKI:  Yes, Your Honor.  We will.

16            THE COURT:  And the order, the protective order.

17            MR. PASTUSZENSKI:  Yes, Your Honor.

18

19        (At 12:17 p.m. proceedings were adjourned.)

20

21

22

23

24

25
```

1                          --oOo--

2                         CERTIFICATE

3

4

5          I hereby certify that pursuant to Section 753,

6     Title 28, United States Code, the foregoing is a true and

7     correct transcript of the stenographically reported

8     proceedings held in the above-entitled matter and that the

9     transcript page format is in conformance with the

10    regulations of the Judicial Conference of the United States.

11

12    Date:  May 13, 2013

13

14

15                      /s/ WIL S. WILCOX
                        U.S. COURT REPORTER
16                        CSR NO. 9178

17

18

19

20

21

22

23

24

25

-
-oOo [1] 55/1
-AND [3] 2/21 3/7 3/16
-oOo [1] 6/2

/
/s [1] 55/15

0
0100 [1] 3/6
02109 [1] 3/14
02265 [1] 6/3
0700 [1] 2/15

1
10 [2] 1/16 6/1
100 [1] 36/8
1000 [1] 3/15
10005 [1] 2/15
10010 [1] 2/6
10017-3954 [1] 3/24
10036 [1] 3/5
10110 [1] 2/24
10th [1] 2/10
11-2265 [1] 1/8
11-ML-02265 [1] 6/3
1100 [1] 4/16
11:07 [2] 1/16 6/1
1200 [1] 2/23
1211 [1] 3/5
12:17 [1] 54/19
13 [1] 55/12
140 [1] 2/14
1560 [1] 4/6
1725 [1] 5/15
1888 [1] 5/14
19th [1] 40/19
1:30 [1] 39/16

2
20 [2] 22/5 22/7
2000 [1] 4/20
2013 [3] 1/16 6/1 55/12
2014 [4] 10/17 10/19 14/3 52/23
2015 [1] 14/2
212-382-3300 [1] 2/24
212-455-2472 [1] 3/24
212-755-0100 [1] 3/6
212-849-7000 [1] 2/6
212-907-0700 [1] 2/15
213 [1] 1/24
213-229-7000 [1] 4/11
213-426-2500 [1] 3/20
213-443-3000 [1] 2/11
213-627-3600 [1] 3/10
213-629-9040 [1] 5/6
213-683-9100 [1] 4/7
2265 [1] 1/8
22nd [2] 2/5 10/19
233 [1] 2/19
2472 [1] 3/24
2500 [1] 3/20
2543 [1] 2/10
260 [2] 15/13 15/18
28 [1] 55/6
2800 [1] 5/9
2849 [1] 1/24
290-2849 [1] 1/24
29th [1] 10/17

3
30 [1] 5/9
300 [1] 40/8

3000 [1] 2/11
3020 [1] 4/21
310-566-8166 [1] 2/20
310-595-3020 [1] 4/21
310-712-6644 [1] 5/15
312 [1] 1/23
3197 [1] 4/11
31st [1] 5/5
3300 [1] 2/24
333 [1] 4/10
355 [1] 4/6
35th [1] 4/6
3600 [1] 3/10
3954 [1] 3/24

4
400 [2] 4/20 13/15
4100 [1] 3/19
415-616-1100 [1] 4/16
425 [1] 3/23
432-A [1] 1/23
4704 [1] 4/21

5
50 [1] 44/13
50 million [3] 29/21 46/9 46/20
500 [2] 2/23 13/15
51 [1] 2/5
53 [1] 3/14
55101 [1] 5/10
5524 [1] 5/5
5994 [1] 4/16

6
601 [1] 3/19
617-570-1000 [1] 3/15
6500 [1] 5/10
651-312-6500 [1] 5/10
6644 [1] 5/15

7
700 [1] 2/19
700,000 [1] 36/25
7000 [2] 2/6 4/11
725 [1] 5/5
753 [1] 55/5
7th [1] 5/9

8
8 million [2] 27/18 29/22
8166 [1] 2/20
82 [1] 23/15
865 [1] 2/10
8th [1] 10/14

9
90012 [1] 1/23
90017 [2] 3/9 3/19
90017-2543 [1] 2/10
90017-5524 [1] 5/5
90067-1725 [1] 5/15
90067-4704 [1] 4/21
90071-1560 [1] 4/6
90071-3197 [1] 4/11
9040 [1] 5/6
90401 [1] 2/19
9100 [1] 4/7
9178 [2] 1/22 55/16
94111-5994 [1] 4/16

A
A.M [2] 1/16 6/1
ability [4] 42/3 46/25 51/15 52/4
able [5] 13/22 35/25 46/21 47/6 47/15

about [54] 10/8 12/9 12/11 16/21 17/19
18/3 18/6 18/11 19/15 19/16 20/16 21/8
25/10 25/11 25/23 26/1 26/6 26/11 26/18
26/23 28/9 28/15 28/17 29/14 31/22
31/24 32/9 33/2 33/23 34/2 34/4 35/19
35/22 36/22 37/3 37/5 37/12 37/18 37/22
38/18 39/16 40/5 40/10 41/22 43/8 46/7
48/17 49/13 52/16 53/19 53/23 53/25
54/2 54/11
above [1] 55/8
above-entitled [1] 55/8
acceptable [2] 10/18 10/21
accommodate [1] 37/23
accomplish [1] 31/6
according [1] 41/18
across [2] 27/3 45/16
act [1] 31/7
acting [2] 33/4 43/18
action [8] 7/8 7/19 7/25 18/23 18/24 19/1
19/13 46/13
actions [4] 19/5 20/20 28/21 46/9
actual [1] 53/20
actually [4] 9/22 41/7 41/20 46/25
additional [1] 23/5
address [6] 11/6 13/5 15/18 25/17 45/10
49/15
addressed [1] 8/18
adequate [2] 12/2 17/1
adjourned [1] 54/19
adjudication [1] 41/23
after [4] 39/23 47/1 50/23 51/2
again [7] 14/1 18/21 28/7 31/21 38/15
50/9 53/10
against [1] 35/25
agree [10] 21/8 27/3 27/9 37/13 41/14
42/21 44/8 44/20 48/22 52/22
agreed [13] 9/19 9/23 10/15 14/19 15/8
17/2 40/17 41/10 45/2 46/8 46/11 46/9
47/13
agreeing [1] 51/11
agreement [5] 8/19 14/25 40/21 42/9
44/24
agreements [1] 24/9
Ah [2] 6/24 25/16
ALAN [3] 3/22 7/7 18/22
Alan Turner [2] 7/7 18/22
ALES [2] 2/13 6/11
Alex [1] 7/14
Alex Mircheff [1] 7/14
Alexander [3] 4/10 4/19 7/21
all [63]
ALLSTATE [3] 2/3 6/8 14/18
almost [1] 30/23
already [3] 15/6 20/10 47/25
also [11] 6/15 7/4 11/16 13/5 19/17 20/21
26/5 41/13 42/5 45/15 53/16
alternately [1] 33/2
although [1] 30/1
am [5] 26/8 36/10 37/16 43/18 48/9
America [1] 7/10
Americas [1] 3/5
among [3] 9/11 10/14 10/24
amount [6] 12/3 12/6 13/7 13/10 47/14
50/18
Angeles [11] 1/15 1/23 2/10 3/9 3/19 4/6
4/11 4/21 5/5 5/16 6/1
another [2] 12/14 21/21
any [22] 9/12 10/2 11/4 12/16 14/11
19/13 19/19 21/9 26/10 38/24 39/19
39/24 41/5 41/15 41/16 42/3 42/22 46/24
51/10 51/24 52/6 52/8
anybody [4] 48/13 53/19 53/22 53/24
anyone [1] 53/6
anything [15] 20/18 22/2 23/9 23/23

**A**

anything [1] 11/24 4/20 30/23 38/18 40/13
  41/24 44/9 51/17 52/10 52/11 53/7 54/11
anyway [3] 10/25 17/8 23/16
anywhere [1] 13/15
apparently [1] 50/19
appear [3] 15/4 37/4 44/7
appearances [5] 2/1 3/1 4/1 5/1 6/6
appearing [3] 6/14 7/15 7/18
appreciate [1] 14/22
approach [1] 48/8
approaches [1] 10/2
appropriate [1] 47/16
appropriateness [1] 45/22
April [1] 40/19
April 19th [1] 40/19
are [141]
areas [2] 35/9 35/11
argument [1] 27/21
around [2] 35/21 43/9
as [68]
ask [6] 31/9 35/12 38/7 52/24 53/12
  53/13
asked [18] 16/9 17/18 18/13 18/24 19/3
  19/12 21/24 22/1 22/1 23/17 30/13 30/19
  33/6 38/12 38/18 41/13 53/19 53/24
asking [11] 16/8 16/10 16/11 20/16 23/15
  23/21 23/24 28/3 35/18 36/14 51/15
aspect [2] 12/14 37/22
aspects [1] 25/3
assess [1] 47/15
assessment [1] 45/21
associated [1] 9/14
associates [1] 43/13
assume [1] 51/6
assumptions [1] 45/21
assurance [3] 43/11 43/20 44/10
assure [1] 44/5
attempt [1] 11/24
attempting [1] 51/10
attention [2] 15/3 53/25
Attorney [12] 2/5 2/9 2/14 2/18 2/23 3/4
  3/9 3/23 4/15 4/19 5/4 5/14
Attorneys [6] 3/12 3/18 4/5 4/9 5/3 5/8
August [2] 10/14 10/17
August 29th [1] 10/17
August 8th [1] 10/14
available [8] 9/18 9/20 9/25 9/25 41/2
  46/11 46/20 47/18
Avenue [7] 2/5 2/23 3/5 3/23 4/6 4/10
  4/20
aware [2] 13/5 13/16
away [1] 53/3

**B**

B.M [1] 2/12
back [13] 13/25 22/16 23/2 31/20 36/16
  38/8 39/18 41/11 41/18 45/23 47/6 52/25
  53/3
backed [1] 1/6 6/4 46/17
backstop [1] 43/19
BANK [24] 2/12 3/2 3/21 6/12 7/8 7/10
  7/11 16/25 18/1 18/22 19/25 24/19 24/25
  25/10 26/14 27/23 29/25 30/2 36/24 37/2
  37/5 38/23 39/23 40/10
Bank's [1] 27/14
banks [1] 3/13
BARTLETT [2] 3/22 7/7
based [1] 42/2
basically [2] 18/8 23/22
basis [3] 13/17 13/18 25/5
battles [1] 7/7
be [40] 10/7 11/4 11/20 13/4 13/15 13/20
  13/22 15/4 20/6 21/22 22/4 22/8 23/4
  28/24 30/12 33/12 33/23 34/6 36/4 38/19
  38/22 39/6 39/12 42/9 42/18 42/22 42/23
  44/7 44/13 46/21 47/6 48/8 48/19 50/18
  50/20 52/24 53/6 53/10 54/5 54/9
because [23] 9/14 12/20 15/5 16/14
  19/22 23/6 24/14 27/2 27/11 27/20 33/13
  35/11 35/12 36/20 38/16 39/18
  43/12 44/2 44/10 44/23 44/25 52/21
becomes [1] 13/19
been [23] 8/15 8/22 11/23 12/3 12/13
  15/23 16/4 17/25 18/5 19/5 22/22 30/22
  32/23 40/20 41/23 42/19 46/13 46/23
  52/5 52/17 53/17 53/21 53/25
before [4] 24/21 28/11 28/24 49/8
behalf [8] 6/8 6/12 7/10 7/18 7/21 7/24
  8/2 8/6
being [4] 20/11 36/22 46/23 54/7
believe [18] 14/25 15/8 19/7 22/20 25/4
  25/6 30/21 32/5 34/4 36/8 37/1 37/7 39/1
  41/20 51/11 51/21 52/6 54/9
benefit [1] 52/13
best [4] 22/20 24/10 47/15 50/8
better [2] 23/11 47/23
between [3] 15/16 28/18 33/7
big [7] 17/15 17/17 32/18 37/14 39/21
  52/19 54/1
bigger [1] 24/25
board [1] 36/17
body [1] 39/20
books [1] 53/23
Boston [1] 3/14
both [3] 14/12 15/8 45/17
bought [7] 9/14 9/22 9/22 31/21 32/17
  33/25 34/19
Boulevard [1] 2/19
Boyce [1] 3/13
Branston's [2] 42/14 42/17
Brian [6] 2/18 3/13 6/14 7/2 8/10 45/7
Brian Lysaght [1] 6/14
Brian Pastuszenski [2] 7/2 8/10
briefly [3] 25/17 46/4 51/9
bring [4] 15/3 42/12 44/9 44/10
bringing [1] 2/14
broad [2] 24/2 45/16
Broadway [1] 2/14
brought [1] 53/25
building [1] 8/24
built [1] 12/6
bundle [1] 34/18
bundled [1] 21/11
burden [1] 23/6
burdened [1] 34/7
burdening [1] 50/9
burdensome [1] 22/16
business [1] 21/9

**C**

CA [6] 3/19 4/16 4/21 5/5 5/15 6/1
CALDWELL [2] 5/3 8/2
CALIFORNIA [8] 1/2 1/15 1/23 2/10 2/19
  3/9 4/6 4/11
call [6] 38/11 39/15 39/16 50/3 50/4 50/5
calling [2] 6/3 17/5
calls [2] 45/20 47/16
came [1] 47/5
camera [1] 41/21
can [26] 13/15 15/22 15/24 17/10 19/1
  19/2 21/7 22/20 30/23 31/4 31/17 32/5
  32/24 35/12 35/15 35/20 36/3 36/4 37/7
  37/11 39/4 39/15 44/9 45/24 46/3 49/8
can't [15] 11/5 11/5 14/10 17/13 32/20
  35/23 37/18 39/17 43/1 43/11 43/20 44/4
  44/4 44/16 45/2

cannot [3] 31/9 39/19 44/8
case [30] 4/3 4/13 5/12 7/15 7/16 12/15
  19/6 19/7 23/1 23/9 24/8 24/21 25/20
  30/20 32/6 36/4 42/3 45/14 46/12 46/14
  46/14 46/16 46/22 46/24 48/10 49/8 50/5
  52/7 52/8 52/13
cases [51] 8/11 9/9 14/12 15/9 16/12
  16/13 16/15 17/23 18/14 19/18 19/22
  20/10 21/2 21/3 21/15 21/18 22/3 22/4
  27/1 28/13 30/6 30/7 30/12 30/18 32/3
  32/23 33/20 35/24 41/8 41/10 41/11
  41/23 42/3 42/10 45/8 45/8 45/16 46/7
  46/22 46/24 47/8 47/17 47/24 48/25 49/7
  49/24 50/1 50/4 50/8 51/12 51/18
CDOs [1] 37/17
Center [1] 4/15
CENTRAL [1] 1/2
Century [1] 5/14
certainly [13] 8/9 12/18 12/24 14/21
  21/12 24/12 25/2 36/13 37/10 48/8 49/19
  50/6 52/23
CERTIFICATE [1] 55/2
certify [1] 55/5
challenge [4] 41/15 42/7 46/25 50/24
challenged [1] 47/16
challenges [2] 42/22 42/23
challenging [1] 47/3
chance [3] 12/5 13/4 49/1
change [1] 12/11
choose [1] 25/22
circumstances [1] 41/16
clawbacks [1] 41/16
clear [4] 30/17 35/1 40/6 43/23
clearer [2] 25/14 42/18
clearly [1] 51/17
client [2] 24/3 36/24
clients [2] 23/23 44/5
close [1] 10/8
closely [2] 30/4 48/11
closes [1] 10/13
closing [3] 8/23 9/17 9/20
Code [1] 55/6
collateral [1] 26/12
colleagues [2] 18/23 30/6
come [4] 44/12 51/16 52/6
coming [1] 54/13
commenced [1] 19/23
company [10] 2/3 2/7 2/16 4/3 4/13 5/7
  6/19 31/8 37/21 54/1
compel [1] 17/6
compile [1] 20/11
complete [1] 17/2
completely [2] 21/5 44/15
complicated [3] 34/25 37/17 37/18
component [2] 12/13 13/5
compromised [1] 47/13
conceded [1] 51/7
conceding [2] 50/22 51/4
concern [2] 8/22 13/25
conclusions [3] 12/4 13/21 45/21
concrete [1] 32/24
conducted [1] 21/9
conference [3] 1/17 43/23 55/10
conferences [1] 47/23
confidentiality [4] 42/6 42/8 42/9 42/13
confining [1] 38/24
conformance [1] 55/9
consider [1] 52/18
considering [2] 17/16 37/16
consultants [1] 45/18
consuming [3] 11/13 11/16 13/13
context [3] 16/22 37/8 46/6
continue [3] 31/19 37/10 44/17
Continued [3] 3/1 4/1 5/1

**C**

contractors [1] 26/7
contracts [2] 34/19 46/19
conversations [1] 39/25
Corp [1] 1/6
CORPORATION [4] 3/2 3/11 4/12 6/4
correct [5] 14/9 35/19 45/12 50/22 55/7
correspondence [1] 25/25
cost [4] 47/25 48/1 49/15 49/16
could [9] 25/5 31/24 32/8 32/14 34/21
 38/17 41/17 48/21 48/22
couldn't [1] 35/12
counsel [10] 2/1 3/1 4/1 5/1 6/6 25/19
 39/10 49/6 49/8 49/8
country [1] 43/19
Countrywide [97]
Countrywide's [7] 16/15 17/25 21/12
 26/19 27/16 29/16 37/20
Countrywide-sponsored [6] 25/21 26/25
 27/10 28/13 29/17 33/19
course [6] 12/14 13/9 26/2 26/4 39/6 52/9
court [27] 1/1 1/22 12/9 15/1 20/14 25/7
 38/8 40/18 40/19 41/1 41/14 41/19 42/4
 42/9 43/6 43/17 43/19 43/25 44/11 46/14
 47/15 51/6 51/25 52/2 52/22 53/18
 55/15
court's [4] 14/22 15/3 42/24 52/7
courtroom [1] 43/13
courts [1] 47/17
cover [2] 37/20 54/12
create [1] 51/10
CROMWELL [2] 5/13 7/24
CRUTCHER [2] 4/9 7/14
CSR [2] 1/22 55/16
current [1] 8/13
cutoff [1] 12/11
CWALT [1] 26/15
CWHL [1] 26/15

**D**

Dan [1] 7/4
Dan Tyukody [1] 7/4
DANIEL [1] 3/17
dartboard [1] 38/22
data [1] 10/3
database [1] 24/15
date [8] 10/15 10/15 10/16 11/2 12/11
 15/24 52/25 55/12
dates [5] 10/16 14/2 14/2 15/18 45/5
David [4] 3/4 5/9 6/18 8/5
David Grais [1] 6/18
David Wilk [1] 8/5
day [1] 48/11
days [1] 45/25
deadline [1] 44/20
deadlines [4] 15/1 15/2 15/4 15/7
deal [8] 24/7 25/5 25/5 28/17 34/4 35/12
 35/23 37/8
deal-by-deal [1] 25/5
dealing [2] 31/8 48/2
deals [27] 16/19 16/20 16/22 18/8 20/21
 20/22 21/4 22/5 22/7 22/23 22/23 26/11
 26/15 26/24 26/25 27/10 27/11 27/23
 28/12 28/13 28/15 28/17 29/2 29/9 32/3
 33/19 35/9
dealt [1] 34/2
December [1] 10/19
December 22nd [1] 10/19
decide [2] 11/3 35/10
decided [2] 13/1 51/17
deeply [1] 37/21
defendant [11] 3/11 3/21 4/3 4/8 4/12

4/17 5/2 5/11 7/21 8/3 52/14
defendants [29] 1/13 7/7 7/11 7/11 7/19 8/11
 8/14 8/20 10/1 12/16 12/21 13/20 15/17
 16/6 18/25 19/20 19/24 20/9 20/24 24/6
 24/6 24/11 24/12 31/3 32/22 34/9 39/10
 44/17 44/22 52/25
defendants' [1] 47/12
deficient [1] 10/2
define [1] 30/3
definition [3] 30/23 30/24 33/10
degree [1] 8/18
deliberately [1] 51/24
depending [2] 13/16 34/13
depose [1] 36/3
deposed [4] 17/11 17/23 17/25 18/6
Deposit [1] 6/19
deposition [6] 16/25 19/16 25/23 31/12
 35/24 36/4
depositions [11] 13/4 16/13 17/3 17/3
 18/14 19/22 23/8 25/10 27/21 32/23 36/8
describe [1] 39/19
described [1] 35/7
description [1] 28/10
designation [3] 41/15 42/6 42/8
designations [2] 47/1 47/3
designed [1] 51/12
desirable [1] 26/19
desire [2] 11/10 14/23
DEUTSCH [1] 2/22
DEUTSCHE [20] 3/21 7/8 16/25 18/1
 18/22 19/25 24/19 24/25 25/10 26/14
 27/14 27/23 29/25 30/2 36/24 37/2 37/5
 38/23 39/23 40/10
Deutsche Bank [4] 16/25 18/22 19/25
 37/5
DIANE [2] 5/13 7/24
Diane McGimsey [1] 7/24
dice [2] 22/11 27/19
did [6] 9/8 10/8 12/25 12/25 14/8 23/23
 27/24 27/25 31/25 32/14 38/21 38/21
 45/12 46/25 50/21 54/2
didn't [3] 6/22 22/14 31/8
difference [2] 21/10 43/17
differences [1] 10/3
different [7] 16/4 21/15 21/16 31/8 33/12
 33/13 54/6
difficult [3] 11/20 12/9 13/10
digested [1] 10/3
diligence [3] 26/1 26/7 26/20
disagreement [1] 10/14
disclosures [1] 46/18
discovery [19] 8/17 10/9 10/13 11/2
 11/23 12/16 13/3 17/5 19/1 37/18 38/2
 38/23 39/8 48/2 50/11 52/16 53/8 53/18
 54/10
discussed [2] 9/16 54/10
discussing [1] 36/10
discussion [3] 9/11 31/18 37/11
dispute [4] 10/24 15/15 42/11 42/13
disputes [4] 15/13 42/13 43/24 53/9
distilled [1] 24/18
DISTRICT [3] 1/1 1/2 1/22
DIVISION [1] 1/3
DLA [2] 4/18 7/21
do [68]
document [14] 15/10 15/13 15/18 16/1
 23/14 23/24 25/22 41/18 42/1 43/16
 48/15 48/17 51/16 52/5
documents [59]
does [5] 15/11 32/9 34/9 44/6 53/6
doesn't [2] 42/12 46/18
doing [5] 20/15 30/4 36/20 49/17 51/3
don't [39] 15/10 17/1 17/4 17/13 17/17
 18/11 20/2 22/8 22/19 24/11 24/15 28/15

29/20 30/10 31/5 31/16 32/1 35/1 35/4
35/16 35/17 35/18 36/1 36/6 36/6 36/13
37/7 38/2 39/17 41/10 41/24 42/12
42/15 44/9 45/24 53/9 53/10 53/12 53/12
done [6] 12/1 27/21 30/9 39/20 52/22
 53/14
doubt [1] 39/22
down [4] 23/3 23/10 38/20 43/18
dozen [1] 19/22
dozens [1] 25/6
drawing [1] 36/17
driven [1] 11/9
drives [2] 10/16 12/6
due [3] 26/1 26/7 26/20
DUNN [2] 4/9 7/14
duplicatively [2] 47/7 49/11

**E**

each [4] 13/15 24/5 43/14 45/13
earlier [1] 52/23
early [3] 11/3 19/23 44/21
easier [1] 38/17
easiest [1] 27/19
East [2] 5/9 5/14
easy [2] 22/10 38/17
efficiency [1] 47/16
efficient [2] 24/16 52/21
efficiently [1] 19/1
eight [5] 19/20 19/25 28/11 29/20 37/4
either [5] 20/13 28/17 32/8 42/20 48/14
ELLSWORTH [3] 3/3 6/18 49/6
else [9] 17/11 18/10 23/16 23/20 24/23
 34/25 40/13 48/14 53/6
else's [1] 50/11
EMANUEL [5] 2/4 2/8 6/7 14/18 49/7
Embarcadero [1] 4/15
enable [1] 16/6
encompass [1] 25/5
end [3] 11/2 14/2 52/23
endlessly [1] 31/24
engage [2] 14/20 19/1
ensuring [1] 9/15
entered [1] 45/1
entire [1] 33/14
entitled [2] 39/8 55/8
entity [1] 18/11
entry [2] 34/9 42/2
ERIC [2] 4/17 7/22
Eric Sieracki [1] 7/22
Esq [5] 3/13 3/13 4/5 4/10 5/9
even [9] 21/17 22/2 23/24 23/25 43/8
 46/12 46/16 46/18 47/1
evening [1] 45/15
ever [8] 39/23 39/25 43/6 47/5 52/11
 52/19 53/22 53/24
every [6] 18/25 33/24 37/22 43/19 48/11
 48/18
everybody [2] 27/2 50/11
everyone [2] 17/11 51/13
everything [9] 18/10 19/12 21/2 23/16
 23/19 23/22 31/10 36/13
exactly [4] 22/15 23/24 29/8 35/22
example [10] 19/10 21/17 22/4 25/9
 25/25 26/17 26/18 29/9 35/20 36/7
exceedingly [1] 49/2
exception [1] 8/15
Exchange [1] 3/14
excluding [1] 26/23
execution [1] 10/7
exercise [1] 51/5
exercises [1] 51/1
exhibits [1] 25/23
exist [1] 26/21
expect [1] 11/21

**E**

expedited [2] 34/16 52/21
expeditiously [2] 46/8 51/14
expensive [1] 11/17
experience [2] 13/13 13/14
expert [7] 10/13 12/2 12/4 12/23 12/24
 45/17 45/18
experts [1] 12/22
explain [2] 9/1 44/4
expressed [2] 8/23 13/24
extent [5] 9/24 25/2 42/23 44/21 47/25
extraordinary [1] 49/15
extremely [2] 11/13 13/13
extremes [1] 33/7

**F**

F.S.B [1] 3/2
face [3] 20/20 21/1 22/9
facilitate [1] 46/7
facing [1] 27/21
fact [12] 9/15 12/24 22/11 47/1 49/5
 49/24 50/23 51/2 51/10 52/1 53/16 54/6
fair [1] 52/16
fairly [2] 11/3 17/15
fall [1] 30/23
Fannie [2] 31/23 34/20
far [1] 35/1
faster [1] 14/23
FDIC [6] 3/2 6/21 6/23 7/16 15/16 26/10
FDIC's [2] 26/9 26/22
Federal [1] 6/19
Federal Deposit [1] 6/19
felt [1] 48/16
few [3] 24/4 41/8 45/25
FHLB [1] 49/7
Fifth [1] 2/23
fighting [1] 43/14
Figueroa [3] 2/10 3/19 5/5
figure [2] 22/12 23/8
file [1] 13/15
filed [3] 10/17 11/4 47/2
files [5] 13/22 22/25 26/16 45/3 50/20
final [1] 10/5
finalized [1] 44/18
financial [5] 1/6 3/11 4/12 6/4 21/21
find [6] 18/10 22/17 23/1 40/3 48/19 54/3
fine [2] 27/19 52/3
firm [5] 7/2 25/19 49/6 49/7 54/8
firms [3] 43/14 49/9 49/25
first [5] 40/24 41/4 43/23 45/11 50/1
Fitzgerald [2] 2/22 6/15
fix [1] 33/16
Floor [4] 2/5 2/10 4/6 5/5
FLYNN [1] 3/8
focus [2] 33/9 33/19
focused [1] 37/3
follow [4] 42/14 42/15 48/11 48/11
forced [1] 28/24
foregoing [1] 55/6
form [1] 38/8
format [1] 55/9
fortune [3] 48/1 48/2 48/5
forward [4] 19/2 23/7 24/10 47/25
forwarded [1] 45/17
found [1] 11/20
four [5] 4/15 16/25 18/2 25/21 32/13
Francisco [1] 4/16
Freddie [2] 31/23 34/21
free [1] 50/24
Fremont [1] 29/10
Friday [2] 1/16 6/1
Friedman [1] 3/13
Friedman-Boyce [1] 3/13

front [4] 16/6 28/3 35/15 47/19
fruitful [1] 38/24
Fugate [2] 5/4 8/23
function [1] 33/4

**G**

gave [1] 28/10
general [5] 26/6 28/18 28/21 33/1 36/22
generalities [1] 53/22
generality [1] 19/15
generally [3] 16/21 21/8 35/13
generated [1] 34/1
get [31] 15/24 16/16 17/10 17/11 17/14
 18/8 18/10 27/20 27/20 28/2 30/2 30/5
 31/10 32/7 32/8 32/21 33/2 33/19 35/15
 35/22 36/3 41/25 42/15 44/18 44/25 45/1
 45/23 52/22 52/25 53/2 53/11
gets [2] 21/18 30/24
getting [6] 12/21 20/17 22/10 29/21 34/11
 45/3
GIBSON [2] 4/9 7/14
Gibson Dunn [1] 7/14
give [10] 8/7 18/1 18/2 19/10 23/3 27/18
 39/12 41/5 41/6 44/9
given [4] 16/13 17/19 32/23 49/5
giving [3] 18/4 41/8 44/1
go [16] 18/9 20/4 21/2 22/16 22/21 22/25
 23/11 31/20 31/24 32/14 35/16 36/16
 41/11 41/19 47/6 49/14
goal [1] 52/24
going [68]
good [23]  6/8 6/9 6/11 6/13 6/16 6/17
 6/20 6/24 7/1 7/5 7/6 7/9 7/13 7/17 7/20
 7/23 8/1 8/5 8/10 18/21 35/24 39/25 53/4
GOODWIN [6] 3/12 3/17 7/2 7/4 8/11
 45/7
Goodwin Proctor [1] 8/11
got [3] 17/2 36/11 36/16
governed [2] 42/9 42/24
GRAIS [7] 3/3 3/4 6/18 6/18 27/9 39/1
 49/6
Grais' [1] 49/6
Grand [2] 4/6 4/10
GRANT [2] 4/19 7/21
Grant Alexander [1] 7/21
Greenwald [3] 2/4 6/7 14/18
ground [2] 47/7 54/12
group [2] 2/17 45/14
gun [2] 48/19 49/2
guns [1] 47/5

**H**

had [16] 8/15 8/23 9/3 14/2 15/13 18/5
 19/9 24/25 27/22 27/23 31/23 35/8 40/8
 48/16 53/5 54/6
half [5] 19/21 19/21 19/25 28/11 29/20
hand [2] 48/15 52/18
handful [1] 18/9
handle [1] 32/8
HAPOALIM [3] 2/12 6/12 7/11
happen [6] 42/12 42/22 43/12 43/12 48/3
 50/14
happened [1] 21/22
happy [3] 37/10 39/9 43/20
hard [2] 14/1 38/16
Harry [2] 2/9 6/10
Harry Olivar [1] 6/10
has [21] 8/22 11/22 12/13 12/14 12/22
 13/19 15/18 16/4 19/3 24/5 27/2 30/9
 35/22 40/25 46/13 48/2 52/5 53/19 53/22
 53/24 53/25
hats [1] 31/25
have [101]
haven't [2] 15/5 54/10

having [3] 29/3 32/6 33/24
he [2] 19/15 28/8
He's [2] 33/6 53/2
head [3] 16/16 23/3 27/13
hear [5] 6/22 14/13 15/20 18/17 32/11
heard [4] 31/14 43/23 44/23 53/6
hearing [3] 10/17 10/18 10/19
held [1] 55/8
here [13] 8/6 20/11 24/2 26/10 33/2 40/6
 42/3 44/12 46/7 47/18 47/24 49/11 50/10
here's [1] 21/7
hereby [1] 55/5
HIBBARD [2] 4/14 7/18
high [1] 53/23
him [1] 24/19
his [1] 30/6
hit [3] 15/5 27/13 45/4
hold [1] 34/9
HON [1] 1/4
Honor [118]
Honor's [1] 10/7
hope [8] 30/1 34/11 36/9 37/11 42/12
 42/22 44/23 53/16
hopeful [2] 32/24 35/15
hopefully [1] 38/22
hoping [1] 38/4
host [1] 29/12
how [11] 17/17 17/18 17/19 18/3 18/5
 20/14 33/13 39/20 43/2 48/18 52/19
huge [1] 47/14
hundred [1] 48/10
hundreds [1] 43/7
hurt [2] 49/18 49/20

**I**

I'll [1] 43/9
I'm [30] 19/15 22/10 26/21 29/5 32/24
 34/12 35/1 35/11 35/22 35/25 36/20
 36/21 37/6 38/16 38/16 38/24 39/18 40/6
 43/9 44/1 44/14 48/12 48/13 48/17 48/23
 48/23 48/24 53/14 53/16 53/17
I've [4] 20/3 25/21 26/16 30/22
identification [1] 32/22
identify [2] 13/17 30/12
immediately [2] 45/17 46/11
impact [1] 26/18
implement [1] 49/13
implications [1] 26/6
implicit [1] 45/20
import [1] 27/3
important [12] 12/15 15/24 20/5 24/8 42/2
 44/6 45/4 46/6 48/16 48/22 51/16 52/5
improperly [1] 52/6
In Re the [1] 6/4
in-camera [1] 41/21
INC [1] 3/21
incentive [2] 50/2 50/4
include [2] 25/24 26/5
included [1] 22/8
includes [3] 17/3 19/17 21/16
including [1] 41/16
income [1] 34/21
incredible [1] 13/19
Indeed [1] 28/1
indemnified [1] 34/20
indicating [1] 53/24
Inez [1] 3/13
information [8] 9/24 9/25 13/19 20/1 26/5
 30/19 33/20 35/5
inherently [1] 50/24
initially [3] 12/24 13/24 14/9
inspect [1] 11/10
instance [2] 46/13 50/2
institutions [3] 22/6 29/2 29/12

**I**

insurance [8] 2/3 2/7 2/16 4/3 4/13 5/7
 6/19 46/19
insurer [1] 46/18
INTEGRITY [3] 2/16 6/14 6/15
intend [2] 11/12 42/12
intent [1] 18/25
interactions [3] 25/4 28/18 28/21
interested [2] 29/16 29/16
interfere [1] 14/11
introduce [2] 19/6 29/1
involve [12] 19/19 20/10 20/21 20/21
 20/22 28/13 30/12 30/18 45/20 46/12
 46/18 51/2
involved [7] 22/24 24/4 27/1 32/15 33/14
 37/21 49/25
involves [2] 30/21 46/19
involving [9] 11/22 11/23 16/12 18/14
 19/13 22/2 22/3 29/1 46/17
irrelevant [3] 19/8 21/5 30/16
is [144]
isn't [1] 17/15
issue [18] 8/20 10/4 11/7 12/24 12/24
 12/25 16/3 16/14 16/15 16/20 22/9 24/1
 24/20 28/6 42/4 42/5 44/19 50/9
issues [13] 8/15 8/18 9/14 15/3 19/6
 20/19 40/22 40/24 42/25 43/24 46/12
 49/10 53/5
it [100]
it's [27] 10/18 12/24 19/21 19/25 20/5
 22/14 22/15 23/3 24/2 28/15 29/18 30/15
 33/10 34/3 35/12 37/13 37/18 38/15
 38/22 39/20 41/18 42/1 44/23 45/4 45/24
 46/5 46/17
Item [1] 6/3
its [5] 16/1 18/11 26/6 31/25 31/25
itself [1] 13/6

**J**

James [1] 4/5
January [3] 17/3 17/11 27/21
Jeanne [2] 5/4 8/2
Jeanne Fugate [1] 8/2
Jim [1] 7/9
Jim Rutten [1] 7/9
JOHN [3] 3/8 6/21 6/23
John Moscarino [1] 6/21
join [1] 39/9
JP [8] 5/17 7/24 16/23 18/1 19/24 27/14
 27/25 29/22
Jr [1] 2/9
judge [14] 1/4 32/5 36/21 41/20 42/11
 42/14 43/5 43/24 44/16 48/21 52/13
 52/20 52/24 53/4
judges [2] 50/7 52/11
judgment [5] 10/16 10/19 11/4 45/20 47/2
judgments [1] 51/3
Judicial [1] 55/10
just [32] 9/8 12/21 13/18 19/14 19/15
 20/15 21/2 24/14 24/18 27/23 28/8 32/11
 32/13 34/17 36/20 37/22 37/23 38/18
 39/2 39/12 39/17 39/19 41/25 42/18
 42/21 44/25 48/11 48/13 50/21 51/3 51/9
 52/4
Justice [2] 42/14 42/17
justification [1] 26/25

**K**

key [1] 16/15
kind [2] 34/13 40/5
kinds [3] 37/7 40/4 40/8
KING [1] 5/8
knew [7] 16/21 16/22 17/24 18/11 25/11

37/5 40/10
know [37] 10/12 12/18 13/1 16/2 17/17
 20/14 20/23 20/25 21/6 21/20 22/23
 22/23 26/13 26/13 29/11 31/16 33/11
 33/13 35/1 35/20 35/21 36/1 36/6 40/5
 40/6 40/10 43/14 44/2 44/2 46/15 47/4
 47/20 48/18 49/17 49/21 50/25 50/25
knowledge [5] 12/19 16/14 27/16 35/8
 37/2
knows [4] 20/14 52/13 52/13 53/23
KURLAND [2] 5/2 8/3

**L**

LABATON [2] 2/13 6/14
language [2] 10/7 49/14
large [3] 11/10 19/7 28/16
larger [1] 26/10
LARSON [1] 5/8
last [7] 8/16 8/21 23/14 28/22 39/22
 44/19 45/10
law [20] 2/5 2/9 2/14 2/17 2/18 2/23 3/4
 3/9 3/12 3/18 3/23 4/5 4/9 4/15 4/19 5/3
 5/4 5/8 5/14 49/25
lead [2] 18/24 43/15
learned [1] 13/21
least [3] 11/11 13/13 33/23
leave [1] 43/13
legal [1] 52/17
lengthy [1] 39/24
LESLIE [2] 5/3 8/3
less [3] 16/8 43/9 48/18
let [4] 34/17 38/2 45/10 48/13
let's [8] 14/15 15/20 18/17 27/19 28/7
 30/5 31/7 39/16
letter [1] 41/17
letters [1] 40/7
Lexington [1] 3/23
LIFE [5] 2/7 2/16 4/3 4/13 5/7 8/6
like [18] 15/18 28/2 30/2 30/11 31/3
 34/10 38/8 41/21 42/1 42/3 44/25 46/22
 46/24 52/6 52/8 52/10 52/11 53/15
likely [1] 52/1
limited [1] 22/3
limiting [1] 27/1
list [1] 30/5
listings [1] 9/4
litigated [1] 51/20
litigation [6] 1/7 6/5 29/4 29/7 31/13
 31/23
little [2] 25/14 54/4
LLC [4] 4/8 5/11 7/15 7/25
LLP [13] 2/4 2/8 2/17 2/22 3/3 3/8 3/12
 3/22 4/4 4/9 4/14 5/8 5/13
loan [16] 8/23 8/24 9/4 9/17 9/20 9/23
 12/4 13/6 13/14 13/15 30/15 30/15 40/6
 40/8 45/3 50/19
loans [24] 9/4 11/11 11/11 11/24 12/3
 13/16 20/22 21/18 22/2 26/3 26/12 26/24
 27/12 30/8 30/12 31/21 32/17 34/5 34/18
 34/19 34/20 34/23 40/11 50/23
locating [1] 9/15
log [2] 41/5 42/2
logs [7] 41/5 41/6 41/8 41/9 41/11 46/22
 51/19
long [8] 13/16 13/25 15/1 15/7 20/1 34/7
 34/7 48/20
look [18] 12/3 12/4 13/22 19/18 24/15
 27/22 32/16 33/11 33/12 38/22 43/18
 44/13 45/18 48/9 48/12 48/14 48/20
 48/23
looked [2] 39/23 54/7
looking [7] 27/10 27/14 30/18 35/6 37/8
 37/16 53/21
Los [11] 1/15 1/23 2/10 3/9 3/19 4/6 4/11

4/21 5/5 5/15 6/1
lose [2] 23/25 46/6
lot [12] 21/15 21/15 22/4 23/4 28/15
 28/16 29/1 30/16 31/8 39/25 50/20 54/12
loud [1] 43/23
low [1] 34/21
LYNCH [1] 4/3
LYSAGHT [3] 2/17 2/18 6/14

**M**

made [3] 24/9 28/20 34/4
Madison [1] 2/5
magistrate [5] 36/21 44/1 44/2 44/4 48/21
MAHER [1] 2/22
major [3] 12/13 13/5 43/16
majority [3] 32/3 32/6 32/9
make [14] 9/20 17/6 21/9 22/14 25/14
 36/11 38/16 38/17 41/1 43/20 46/11
 46/19 50/21 52/21
makes [3] 25/3 43/17 47/10
making [6] 33/1 34/25 35/1 40/6 47/18
 49/18
MANOLOVA [1] 3/18
many [13] 17/18 17/19 18/3 18/5 20/2
 20/4 20/20 20/22 26/15 33/13 48/18
 50/23 51/2
Marc [2] 2/4 6/7
MARIANA [1] 1/4
Mark [1] 14/18
Mark Greenwald [1] 14/18
market [2] 40/1 40/11
MARTIS [2] 2/13 6/11
Martis Ales [1] 6/11
Maryland [1] 7/11
MASS [1] 5/12
MASSACHUSETTS [3] 2/7 3/14 4/13
MassMutual [13] 6/10 7/8 7/15 7/19 7/25
 8/12 15/16 15/17 18/23 18/24 19/3 19/20
 45/9
material [3] 18/9 30/16 47/14
materials [1] 29/1
matter [7] 7/12 8/12 24/4 33/10 39/20
 43/18 55/8
matters [3] 9/13 11/22 17/24
may [16] 1/16 6/1 11/6 13/8 15/24 21/9
 22/4 25/17 33/11 35/6 36/2 38/7 41/14
 45/10 46/4 55/12
May 10th was [1] 15/24
maybe [3] 12/10 34/21 52/24
MBIA [8] 46/14 46/22 46/25 47/2 48/10
 49/8 51/21 51/23
MCGIMSEY [2] 5/13 7/24
MCLEOD [1] 3/8
MDL [1] 43/23
me [24] 6/14 7/3 9/1 18/24 19/10 19/15
 20/2 25/14 30/21 32/5 32/11 34/17 38/11
 38/12 39/12 39/17 40/23 43/11 43/20
 43/20 44/12 45/10 47/24 48/20
mean [5] 12/9 17/21 32/7 32/9 37/17
means [2] 25/18 26/11
MERRILL [1] 4/3
methodology [3] 44/21 44/22 45/2
might [3] 11/21 22/17 33/23
milestones [1] 15/5
million [9] 19/21 19/25 27/18 28/11 29/20
 29/21 29/22 46/9 46/20
mind [1] 12/11
MINNESOTA [3] 5/7 5/10 8/6
minor [2] 24/5 27/22
minute [2] 32/11 34/17
Mircheff [2] 4/10 7/14
ML [2] 1/8 6/3
money [1] 51/13
Monica [1] 2/19

# M

monumental [1] 39/20
more [10] 19/20 20/21 21/10 30/4 34/17
 34/25 36/11 38/24 39/19 46/7
MORGAN [7] 5/11 7/24 16/23 18/2 19/24
 27/25 29/22
Morgan's [1] 27/14
morning [19] 6/8 6/9 6/11 6/13 6/16 6/17
 6/20 7/1 7/5 7/6 7/9 7/13 7/17 7/20 7/23
 8/1 8/5 8/10 18/21
mortgage [4] 1/6 6/4 33/14 46/17
mortgage-backed [3] 1/6 6/4 46/17
mortgages [2] 33/25 34/1
MOSCARINO [4] 3/8 3/8 6/21 6/23
most [3] 24/7 34/21 52/11
motion [2] 11/3 47/2
motions [3] 10/16 10/19 17/6
move [3] 11/1 24/10 46/2
moves [1] 19/2
moving [2] 45/19 46/7
Mr. [13] 6/15 8/8 14/19 15/17 19/9 26/11
 27/9 30/6 31/19 39/1 39/10 40/18 49/6
Mr. Grais [2] 27/9 39/1
Mr. Grais' [1] 49/6
Mr. Olivar [4] 15/17 19/9 31/19 39/10
Mr. Pastuszenski [3] 8/8 14/19 40/18
Mr. Steve [1] 6/15
Mr. Turner [1] 30/6
Mr. Turner's [1] 26/11
MRP [1] 1/8
much [5] 24/25 33/22 49/18 50/2 50/4
multiples [1] 48/5
multiplies [1] 13/18
multiply [1] 48/4
MUNGER [2] 4/4 7/10
MUTUAL [3] 2/7 4/13 5/12
my [8] 7/3 12/11 18/23 22/1 24/3 25/19
 36/24 53/25
myself [2] 39/22 40/6

# N

nail [1] 27/13
namely [1] 8/22
narrow [1] 33/22
narrowed [1] 35/22
narrowing [1] 35/11
NATIONAL [3] 2/16 6/14 6/15
necessarily [1] 26/23
need [9] 12/2 13/22 14/20 23/6 24/12
 36/3 41/10 44/5 50/10
needs [1] 52/22
negotiate [2] 14/24 44/17
negotiating [1] 40/21
negotiation [1] 14/24
never [5] 32/8 41/9 43/6 43/6 50/14
New [12] 2/6 2/6 2/15 2/15 2/24 2/24 3/5
 3/5 3/24 6/18 6/18 46/14
next [2] 11/3 39/16
no [31] 1/8 10/14 10/20 10/23 10/24
 12/23 14/7 19/14 21/6 21/6 21/6 22/10
 22/11 25/7 25/7 25/12 26/11 26/25 30/15
 30/20 32/2 35/6 41/19 43/17 44/8 44/14
 47/5 47/9 47/10 52/17 55/16
nobody [2] 53/19 53/24
normal [2] 17/5 18/10
North [2] 1/23 4/20
not [95]
note [1] 50/17
notes [1] 53/18
nothing [11] 12/22 18/1 18/2 24/23 32/7
 33/6 36/23 36/25 41/25 44/23 52/2
now [35] 8/7 10/5 10/8 14/7 14/8 15/20
 17/10 19/16 24/17 25/13 33/7 33/22

35/24 36/16 37/16 38/6 39/1 39/11 39/13
39/17 40/13 43/1 43/3 43/11 44/10 46/13
46/21 47/6 48/17 49/4 52/17 53/2 53/6
53/8 53/17
number [4] 6/3 13/16 42/4 42/5
NY [1] 3/24

# O

object [2] 25/9 26/23
objections [1] 17/5
obtained [1] 51/25
obviously [5] 19/14 21/23 22/7 29/13
 50/18
occur [1] 48/18
off [2] 10/9 18/24
offer [3] 31/17 43/11 43/20
offered [2] 33/6 54/7
offering [4] 9/16 40/9 40/11 53/22
offerings [8] 9/13 9/21 11/12 20/17 37/3
 40/4 40/5 40/12
Official [1] 1/22
oftentimes [1] 36/2
Oh [6] 20/23 21/6 26/13 50/25 51/23 53/2
Okay [2] 33/18 43/2
Olivar [6] 2/9 6/10 15/17 19/9 31/19
 39/10
OLSON [2] 4/4 7/10
once [3] 12/1 13/20 38/15
one [31] 8/14 8/15 8/20 9/2 12/8 13/23
 15/2 15/2 15/15 16/3 20/19 20/21 21/10
 22/5 26/10 29/9 30/1 34/17 39/22 40/5
 40/24 42/4 43/3 45/13 47/23 48/18 48/19
 48/22 49/6 49/9 50/17
ones [9] 9/8 9/22 20/16 27/1 34/22 40/10
 48/12 48/14 52/17
only [19] 10/4 16/19 16/19 16/21 19/4
 19/21 19/23 22/4 25/25 26/12 29/16
 31/14 31/16 32/13 41/6 42/25 44/13 53/5
 53/21
oOo [2] 6/2 55/1
open [1] 8/21
Option [1] 29/9
order [16] 15/25 25/8 28/3 40/20 41/14
 42/10 42/15 42/16 42/18 42/24 45/1 46/7
 46/8 49/14 54/16 54/16
ordered [1] 41/14
orders [2] 17/6 44/3
original [3] 14/1 22/21 23/12
originally [1] 16/9
originated [2] 27/12 30/8
originating [1] 32/16
origination [1] 26/19
originator [3] 21/20 21/13 31/21
originators [5] 13/15 21/4 21/8 21/11 29/1
originators' [1] 20/22
other [46] 8/12 9/13 9/21 10/16 11/18
 11/22 13/3 13/14 19/5 20/22 20/22 20/24
 21/4 21/4 21/8 21/11 21/13 22/5 22/6
 22/7 25/3 25/6 26/14 28/15 29/1 29/2
 29/2 29/12 32/17 34/2 34/19 34/24 34/24
 35/21 37/9 43/14 43/19 45/8 46/22 48/11
 48/15 48/25 51/18 52/6 52/8 52/18
otherwise [1] 51/5
our [12] 13/13 22/11 23/6 23/9 23/23
 24/14 34/12 44/5 45/17 45/18 45/18
 52/24
ourselves [1] 51/14
out [20] 10/5 12/13 18/10 22/12 22/17
 23/8 29/19 32/11 32/24 33/25 36/17
 36/18 37/24 39/18 40/4 44/13 47/6 49/2
 53/13 54/3
outside [2] 37/8 45/18
outstanding [1] 53/9
over [8] 20/3 20/14 21/2 21/3 36/8 36/10

42/13 53/10
overall [3] 8/14 8/17 12/3
own [2] 34/23 42/15

# P

p.m [1] 54/19
page [2] 16/4 55/9
Page 4 [1] 16/4
pages [9] 13/16 19/21 19/25 27/18 28/11
 29/22 29/24 36/25 46/9
pages' [1] 46/20
paper [2] 33/24 37/4
parallel [1] 47/7
Park [1] 5/14
part [7] 11/10 21/23 23/6 26/12 34/20
 38/21 47/17
participate [1] 39/5
particular [7] 9/16 18/15 20/15 20/16
 20/16 25/23 38/24
particularly [1] 49/5
parties [16] 9/19 10/6 10/11 10/14 10/25
 12/10 14/19 15/19 23/6 40/17 40/19
 40/20 44/20 47/15 47/16 50/5
parties' [1] 44/19
partner [1] 7/3
party [2] 42/7 42/17
Pastuszenski [7] 3/13 7/2 8/8 8/10 14/19
 40/18 45/7
Paul [1] 5/10
PC [1] 5/3
people [13] 11/18 17/4 17/25 22/23 22/24
 25/10 32/17 34/2 34/19 34/24 34/24 36/9
 38/23
perfectly [2] 37/19 47/21
perhaps [1] 39/4
period [2] 20/3 20/15
person [1] 53/14
personally [2] 25/22 26/16
perspective [2] 26/9 26/22
PFAELZER [1] 1/4
Phone [1] 1/24
picayune [1] 43/24
piece [2] 27/11 33/24
PIPER [2] 4/18 7/21
place [4] 3/14 8/25 20/14 40/1
places [1] 37/9
plaintiff [12] 2/12 2/16 3/2 5/7 5/7 19/3
 19/3 25/3 25/20 37/11 38/20 45/14
plaintiffs [40] 8/23 9/3 9/12 9/14 9/21
 9/22 11/12 11/24 12/1 12/15 12/25 13/17
 13/21 14/1 15/16 16/3 19/11 23/14 24/14
 26/10 28/20 35/21 45/13 45/20 45/23
 46/21 46/24 46/24 47/2 47/6 47/8 47/13
 48/4 49/13 49/16 50/1 50/2 50/4 50/19
 53/5
plaintiffs' [7] 10/1 11/10 13/2 16/8 24/8
 25/15 42/3
plan [1] 44/9
play [1] 8/13
playing [1] 34/14
please [8] 6/6 6/25 14/13 25/16 28/7
 39/17 40/15 45/6
plenty [1] 37/5
Plus [1] 42/19
point [4] 8/16 9/2 45/11 45/11
pool [1] 21/18
pooled [1] 11/11
population [1] 13/19
position [7] 9/3 10/1 13/5 24/18 47/13
 49/21 53/11
positioned [1] 50/8
positions [1] 16/4
positive [2] 8/14 26/21
possible [3] 44/21 45/19 52/21

**P**

practical [2] 29/19 37/19
practice.s [1] 17/25
practices [5] 16/15 18/11 26/7 26/19 27/16
precisely [1] 33/13
predominantly [2] 30/13 32/15
prepare [2] 14/12 15/9
prepared [3] 31/18 41/7 41/9
present [2] 14/25 26/24
presented [1] 15/23
preserved [1] 22/22
PRESIDING [1] 1/4
presume [1] 19/16
previous [1] 28/25
previously [2] 16/16 17/20
primarily [1] 29/16
principal [3] 4/3 24/5 52/16
principally [2] 30/18 30/21
prior [27] 16/1 16/12 17/12 18/6 22/11 23/2 23/16 24/9 24/14 27/16 28/4 31/13 32/3 36/3 36/8 37/8 40/25 41/1 41/7 41/9 41/15 41/23 42/5 42/10 46/9 47/23 51/11
privilege [18] 40/25 41/5 41/6 41/7 41/9 41/11 41/15 41/23 41/25 46/5 46/22 47/1 47/3 47/16 48/14 49/10 50/3 51/19
privileged [4] 41/18 41/20 42/1 44/7
privileges [1] 48/25
probably [7] 20/17 30/7 38/18 38/23 40/3 41/24 51/20
problem [4] 21/1 21/7 29/18 29/19
procedure [1] 34/10
proceedings [3] 1/14 54/19 55/8
process [9] 11/14 11/23 12/20 17/5 18/10 33/15 37/21 45/3 45/4
PROCTER [4] 3/12 3/17 7/2 7/4
PROCTOR [4] 5/3 8/2 8/11 45/8
produce [14] 9/4 9/23 16/1 16/6 20/9 24/13 28/4 28/25 30/16 32/9 36/23 38/18 46/8 47/14
produced [10] 16/16 17/20 19/12 20/10 21/3 29/6 42/19 46/9 46/23 46/23
produces [2] 36/25 36/25
producing [3] 17/12 28/14 36/7
production [3] 19/4 25/22 27/17
productions [26] 13/2 16/1 16/12 16/13 17/10 17/12 18/7 22/12 22/16 23/2 23/7 24/10 24/14 25/5 28/4 28/25 32/3 37/9 40/25 41/2 41/7 41/9 41/16 42/6 51/11 51/12
professional [1] 23/7
promptly [1] 22/25
proportionality [2] 20/6 20/7
proposal [5] 16/23 36/23 41/19 45/16 53/1
proposals [2] 45/13 45/19
propose [5] 31/3 31/4 31/5 42/7 42/8
proposed [17] 8/17 10/17 10/18 13/24 15/1 15/2 15/12 15/19 20/8 23/13 40/16 40/20 41/4 41/5 44/19 44/22 49/16
proposing [3] 14/6 45/22 48/4
protect [1] 49/22
protected [1] 49/25
protective [10] 15/25 40/20 41/13 42/10 42/15 42/16 42/18 42/24 45/1 54/16
provides [1] 15/8
purchaser [1] 46/17
pursuant [1] 55/5
pursued [1] 49/10
pushed [1] 14/2
put [2] 33/25 40/11
putting [1] 23/7

**Q**

qualify [1] 50/22
quarrel [1] 52/9
question [4] 16/5 20/16 38/7 46/5
quickly [6] 19/2 24/13 27/20 32/24 46/2 52/22
QUINN [5] 2/4 2/8 6/7 14/18 49/7
quite [3] 11/16 11/25 54/12

**R**

rapidly [1] 45/19
rather [2] 50/8 51/11
re [13] 1/6 6/4 11/13 11/24 12/5 13/6 13/18 14/20 45/2 45/4 50/19 50/22 51/1
re-underwrite [2] 11/13 11/24
re-underwriter [1] 12/5
re-underwriting [8] 13/6 13/18 14/20 45/2 45/4 50/19 50/22 51/1
reached [3] 8/19 13/21 40/21
reaching [1] 44/24
read [6] 20/3 23/8 43/9 44/3 53/22 54/1
readily [1] 9/17
reading [1] 54/4
ready [1] 15/25
really [7] 18/11 38/17 43/17 47/17 48/16 48/19 53/2
reason [2] 11/4 52/17
reasonable [2] 20/13 48/8
reasonably [1] 35/19
rebut [1] 12/5
recall [1] 13/8
recalls [1] 41/1
receive [1] 45/13
received [2] 13/2 45/15
RECEIVER [1] 3/2
record [3] 50/17 50/21 51/4
recreate [1] 41/11
redepose [1] 36/9
redress [1] 42/4
refer [1] 29/25
referring [1] 28/8
reflect [1] 51/4
reflected [1] 10/7
refused [1] 30/14
regard [3] 8/16 12/17 12/19
regarding [2] 8/23 9/12
regardless [1] 46/10
regulations [1] 55/10
relate [4] 17/12 22/18 22/19 25/24
relates [4] 22/12 22/13 27/17 31/9
relating [6] 21/4 23/22 23/22 28/4 28/21 29/9
relationship [5] 25/1 27/15 27/24 35/7 39/24
relationships [2] 31/23 40/2
relatively [1] 37/22
relevant [7] 23/1 23/5 23/9 26/18 35/8 35/11 46/12
reliable [2] 50/24 51/5
reliance [1] 12/20
relitigate [3] 41/24 51/17 51/25
rely [1] 43/12
relying [1] 54/5
remain [1] 42/25
remained [2] 8/21 10/4
remaining [1] 15/15
remedy [3] 41/19 44/7 44/8
remote [1] 49/3
report [2] 8/8 38/8
reported [1] 55/7
Reporter [2] 1/22 55/15
REPORTER'S [1] 1/14
reports [1] 12/2

**Representations [1] 34/4**

representing [3] 7/7 18/22 24/19
repursue [1] 49/11
request [2] 33/1 36/11
requested [1] 19/5
requesting [2] 23/25 24/1
requests [7] 23/15 23/15 24/2 25/3 28/20 28/22 37/7
require [1] 45/21
required [1] 50/20
resolve [4] 43/1 44/17 50/8 53/8
resolved [2] 8/14 8/22
resonated [1] 47/24
respect [2] 24/20 54/4
respond [3] 28/22 45/25 46/5
responses [1] 13/3
responsibilities [1] 23/7
restrict [1] 52/18
restricted [1] 35/9
resubmit [3] 39/13 40/18 50/15
result [4] 10/2 19/4 20/12 20/17
results [1] 16/23
retread [1] 47/6
review [2] 41/21 43/7
reviewed [4] 12/3 13/20 25/22 27/2
reviewing [3] 45/23 50/11 50/21
revolves [1] 43/9
right [24] 6/24 8/7 14/8 14/10 14/11 15/10 15/20 17/9 18/17 20/19 24/24 29/15 30/5 30/11 32/10 34/8 36/16 38/4 39/4 39/11 40/13 45/6 46/1 53/3
risks [1] 13/1
robust [1] 39/8
role [4] 21/12 24/5 27/22 34/13
roles [2] 21/13 31/9
room [1] 24/7
rule [2] 48/24 48/24
ruling [4] 51/24 53/11 53/12 53/13
Rutten [2] 4/5 7/9

**S**

said [11] 14/19 18/1 18/7 19/9 24/18 28/24 33/18 39/2 41/6 47/22 51/16
same [4] 13/22 20/10 33/23 49/25
sample [4] 11/11 13/17 45/14 45/16
samples [1] 8/25
sampling [6] 10/2 44/21 44/22 45/1 45/11 52/25
San [1] 4/16
Sanford [1] 8/3
Santa [1] 2/19
saving [2] 51/13 51/13
say [19] 11/15 13/23 14/10 16/18 16/19 31/11 35/20 35/25 36/22 38/20 39/16 39/17 39/18 41/19 42/11 42/14 44/12 44/14 49/4
saying [7] 23/25 35/19 37/7 41/17 49/12 49/14 53/17
scenarios [1] 21/16
schedule [26] 8/17 8/17 8/18 9/25 10/6 10/11 11/9 12/6 12/13 13/6 14/1 14/23 14/25 15/8 15/12 15/23 16/7 17/2 23/10 34/10 39/11 39/12 40/17 44/20 50/16 54/14
schedules [3] 8/24 9/17 9/20
scientifically [1] 51/5
scope [2] 8/18 26/20
Seattle [1] 49/7
secondary [1] 24/12
Secondly [1] 46/4
Section [1] 55/5
securities [11] 1/6 3/21 4/8 5/11 6/5 7/8 7/15 7/25 18/23 24/20 46/17
securitization [4] 22/5 33/15 37/20 53/20

**S**

securitizations [13] 3/7 9/8 11/24 19/19
 20/11 22/3 22/24 24/4 25/6 25/21 25/24
 25/25 27/4
securitized [2] 21/19 40/9
see [9] 12/9 15/22 17/13 20/3 26/25
 33/21 33/21 38/22 51/19
seek [2] 25/4 42/4
seems [2] 15/4 42/1
seen [3] 26/16 52/11 54/11
segregate [1] 22/18
sell [3] 34/20 34/23 34/24
selling [1] 32/16
send [1] 41/17
sense [1] 47/10
sent [1] 44/22
sentence [1] 23/19
separate [1] 45/14
series [1] 51/2
seriously [1] 39/22
serve [1] 23/17
served [2] 23/14 28/22
set [1] 24/2
settled [4] 41/10 41/12 46/13 49/8
seven [1] 37/4
SHEARMAN [2] 4/14 7/18
sheets [2] 37/4 54/8
short [3] 20/14 37/21 37/22
shorter [1] 36/4
should [7] 9/4 11/15 20/3 38/10 38/11
 38/12 42/22
show [1] 24/19
showing [1] 27/14
side [2] 16/8 25/15
sides [2] 14/12 15/9
SIERACKI [2] 4/17 7/22
sign [1] 15/11
signed [2] 15/25 53/20
significant [1] 27/24
simply [2] 37/7 49/15
SIMPSON [3] 3/22 7/7 18/22
since [1] 53/9
single [1] 33/24
sit [2] 38/20 48/23
situation [3] 23/4 44/3 53/12
situations [1] 21/16
six [2] 31/15 31/17
size [1] 17/16
slice [2] 22/11 27/19
slipping [1] 15/5
slow [2] 23/3 23/10
small [1] 27/11
smoking [3] 47/5 48/19 49/2
so [36] 13/5 14/13 14/22 17/10 21/1
 22/15 23/16 24/2 24/13 26/9 26/22 27/24
 27/25 28/3 28/14 29/22 35/15 37/18
 37/24 38/1 40/3 40/10 41/17 42/11 42/21
 43/2 43/8 43/16 44/8 44/16 48/16 49/4
 49/9 52/17 52/23 54/12
some [20] 15/4 15/5 17/1 19/17 20/6
 21/12 21/18 24/15 25/24 27/12 29/24
 34/1 34/18 34/19 35/21 37/12 42/19 44/6
 44/7 48/21
somebody [2] 34/25 53/11
something [18] 13/7 21/7 31/4 31/4 31/5
 31/9 32/6 32/8 32/24 33/8 35/15 40/8
 43/16 46/8 47/22 50/3 50/23 52/15
sometime [1] 45/12
sometimes [2] 21/13 21/13
soon [2] 15/24 45/24
sophistication [1] 12/20
sorry [1] 29/5
sort [2] 11/23 22/17

source [3] 12/15 22/21 22/22
sources [1] 23/12
South [5] 2/10 3/19 4/6 4/10 5/5
span [1] 37/22
speak [1] 49/13
specific [7] 28/17 36/11 36/23 38/12 40/4
 40/4 45/14
specifically [3] 16/10 31/11 51/12
specifics [1] 37/12
specify [2] 33/4 34/12
specifying [2] 35/13 39/5
spend [1] 50/20
spent [1] 50/19
spoke [2] 8/16 8/21
sponsor [5] 21/17 21/21 27/17 28/5 31/22
sponsored [16] 22/5 24/6 25/21 26/25
 27/10 28/8 28/12 28/13 29/2 29/9 29/17
 30/13 31/1 31/2 32/4 33/9
sponsoring [1] 32/16
Spring [1] 1/23
squarely [1] 21/25
St [1] 5/10
stages [1] 19/23
standing [1] 15/25
standpoint [1] 53/18
STANFORD [1] 5/2
Stars [1] 4/20
start [5] 16/16 23/3 43/14 45/2 50/10
started [1] 12/21
starting [1] 45/3
state [4] 3/14 6/6 8/13 46/14
statement [1] 26/11
STATES [3] 1/1 55/6 55/10
statistical [1] 45/22
STATUS [1] 1/17
stenographically [1] 55/7
STEPHEN [1] 4/14
STERLING [2] 4/14 7/18
Steve [2] 6/15 7/18
Steve Hibbard [1] 7/18
Steven [1] 2/22
stick [3] 15/1 15/7 18/8
still [2] 15/13 24/1
stop [1] 38/2
Street [6] 1/23 2/10 3/14 3/19 5/5 5/9
stuff [1] 47/18
subject [5] 16/7 32/18 39/20 43/21 54/9
subjective [1] 51/2
submit [6] 10/6 40/19 51/25 52/1 52/2
 54/13
submitted [3] 10/11 12/2 16/5
substantial [1] 35/15
substitute [1] 23/18
such [2] 30/20 33/1
Sucharo [1] 6/12
SUCHAROW [1] 2/13
sued [2] 20/11 25/20
sufficient [1] 14/20 15/9
suggest [1] 20/7
suggesting [1] 47/14
Suite [5] 2/19 2/23 3/19 4/20 5/9
SULLIVAN [4] 2/4 2/8 5/13 7/24
summaries [1] 54/6
summary [4] 10/16 10/19 11/3 47/1
superficially [1] 21/7
supposed [1] 40/19
sure [2] 26/8 50/21
suspect [1] 54/3

**T**

table [1] 35/21
tailored [1] 19/6
take [17] 10/1 13/1 13/4 13/7 13/9 30/15
 34/17 34/19 34/23 36/4 37/18 39/12

45/25 48/10 48/20 48/21 51/11
taken [2] 9/3 18/14
takes [2] 8/25 11/24
taking [1] 25/9
talk [1] 26/18
talked [3] 19/16 33/2 53/10
talking [13] 17/19 18/3 19/15 29/14 31/22
 33/23 35/22 37/12 40/5 41/22 43/8 46/6
 48/17
tape [1] 10/1
tapes [5] 8/24 9/4 9/15 9/16 9/23
targeted [1] 25/3
task [1] 13/18
teams [1] 49/9
telephone [3] 38/11 39/15 39/16
tell [13] 16/20 16/22 18/4 18/5 18/6 20/2
 28/14 28/16 30/21 38/11 38/12 40/23
 43/3
telling [2] 34/12 36/21
ten [1] 43/9
tens [1] 43/8
TEODORA [1] 3/18
testified [1] 28/6
testimony [1] 36/3
THACHER [3] 3/22 7/7 18/22
than [15] 8/12 9/13 9/21 16/9 19/20 21/10
 25/1 30/4 34/25 39/19 43/9 45/8 48/18
 50/8 51/12
Thank [11] 14/14 14/17 18/19 27/8 34/15
 36/12 36/15 38/5 40/16 51/8 54/13
that [273]
that's [46] 9/24 10/21 12/8 14/9 14/15
 15/2 15/2 15/23 17/1 17/9 17/9 17/15
 18/12 19/14 19/20 20/2 20/3 21/7 24/24
 26/8 27/18 29/3 29/13 29/15 30/22 31/2
 31/13 33/12 33/15 33/22 35/11 36/20
 40/1 40/1 40/6 42/4 42/16 43/22 44/15
 46/1 47/12 47/17 52/12 52/16 52/23
 53/13
the Countrywide [1] 7/3
their [27] 8/24 12/2 12/4 12/4 13/17 13/18
 15/9 17/10 17/11 17/12 17/22 19/23
 20/17 22/25 24/7 25/9 27/15 27/16 28/2
 28/4 28/5 34/23 37/2 37/3 41/1 41/18
 49/21
theirs [1] 34/18
them [30] 11/13 14/13 18/13 21/12 22/17
 22/18 23/9 24/5 27/1 28/3 28/22 30/8
 30/12 30/13 31/17 33/25 34/18 34/20
 34/23 34/24 35/21 36/23 43/9 44/14
 48/14 49/11 51/10 51/13 51/14 54/1
then [15] 10/16 12/5 13/20 13/25 14/15
 20/7 28/5 32/24 34/2 34/23 39/4 41/6
 43/13 43/17 45/15
there [38] 9/11 9/24 10/14 10/24 11/4
 11/22 15/12 15/15 20/5 21/8 21/10 21/10
 22/4 22/10 26/15 30/20 31/14 31/16 33/7
 40/13 41/24 42/1 42/11 42/13 42/23 43/3
 44/6 48/15 48/24 49/2 49/2 50/2 50/18
 51/15 52/4 52/24 54/3 54/12
there's [1] 41/23
these [31] 9/9 15/7 16/15 16/19 16/22
 18/8 20/15 20/16 21/11 22/23 23/22 24/1
 27/1 27/20 27/23 28/17 35/8 35/9 41/15
 43/14 45/16 45/19 46/7 47/8 47/24 49/24
 50/1 50/2 50/4 51/1 51/12
they [89]
they've [9] 20/10 21/25 22/1 23/17 24/9
 30/14 32/23 32/23 41/13
thing [9] 13/23 22/20 30/20 33/23 38/25
 43/3 50/17 51/7 53/21
things [7] 12/8 19/2 24/15 31/22 31/24
 32/14 32/15
think [32] 8/13 13/14 14/16 17/1 17/4

**T**

think... [2?] 18/12 23/10 23/11 24/11
24/15 27/2 28/15 32/2 32/25 32/25 38/10
38/11 38/17 39/3 42/16 42/18 42/21
42/25 45/15 45/24 46/5 48/8 48/9 48/12
49/9 49/24 54/2
this [68]
those [55] 9/21 10/3 12/5 14/2 17/25
19/22 21/2 21/3 21/23 22/7 22/16 23/2
23/8 25/3 25/25 26/16 26/17 27/2 28/14
28/15 28/21 28/22 28/25 29/6 29/24
30/10 33/7 34/5 34/20 34/24 36/9 37/7
40/7 41/10 41/23 42/10 42/24 45/5 45/17
46/10 46/20 46/24 47/17 48/12 48/24
49/7 49/9 49/9 50/7 51/18 51/19 53/4
54/1 54/4 54/7
thought [1] 53/25
thousands [1] 43/7
three [4] 19/19 19/24 32/13 35/8
through [5] 18/9 22/17 24/15 35/16 37/12
throwing [1] 24/13
Thursday [1] 39/16
time [20] 8/21 11/13 11/16 12/3 12/6 13/8
13/10 13/13 14/16 14/20 15/9 20/1 20/3
20/15 34/7 37/22 50/19 50/20 51/13 52/7
time-consuming [1] 11/13
timetable [2] 12/7 13/24
timing [1] 11/7
Title [1] 55/6
today [6] 15/4 15/23 23/25 24/1 44/20
53/5
together [3] 21/11 34/1 34/18
told [2] 32/13 44/10
TOLLES [2] 4/4 7/10
tomorrow [1] 41/17
too [8] 13/25 14/23 16/3 20/2 20/4 30/2
36/22 49/22
took [3] 20/1 20/14 39/25
topic [1] 37/14
topics [1] 38/12
totally [1] 48/13
touched [1] 23/23
Tower [1] 4/20
tracks [1] 37/20
tranche [1] 9/16
tranches [1] 9/13
transcript [3] 1/14 55/7 55/9
transcripts [17] 16/24 16/24 16/25 17/18
17/21 17/22 18/2 18/3 18/13 19/12 19/16
19/22 28/5 31/12 35/24 36/8 46/11
tread [1] 47/7
tremendous [3] 13/7 13/10 50/18
trial [1] 46/13
tried [2] 11/18 14/24
true [4] 26/8 27/23 52/12 55/6
truly [1] 25/24
trying [4] 27/20 38/16 38/16 49/13
turn [3] 12/6 21/2 53/13
turned [1] 44/13
TURNER [4] 3/22 7/7 18/22 30/6
Turner's [1] 26/11
turning [1] 21/3
twice [1] 44/10
two [12] 10/16 15/13 15/16 24/3 27/23
33/7 40/21 40/24 42/5 42/25 45/13 49/24
typically [1] 25/24
TYUKODY [2] 3/17 7/4

**U**

U.S [2] 1/22 55/15
UBS [12] 4/8 7/15 16/25 17/1 18/2 19/24
25/20 26/14 26/17 27/24 29/22 36/25
UBS Securities [1] 7/15

UBS's [3] 25/22 26/6 27/15
ultimately [1] 9/19
under [2] 41/16 44/19
understand [17] 11/12 12/25 24/17 35/2
36/22 37/6 37/19 39/1 39/12 44/3 44/16
47/20 49/12 49/23 52/1 52/7 52/20
understanding [1] 22/1
understood [7] 21/14 32/21 35/14 43/22
44/15 44/16 50/12
underwrite [2] 11/13 11/24
underwriter [12] 12/5 15/17 16/6 18/15
18/25 19/20 19/24 20/9 24/3 24/11 25/20
54/6
underwriters [8] 17/13 18/18 21/22 26/15
26/17 28/18 39/8 54/5
underwriters' [3] 16/11 16/14 17/4
underwriting [8] 13/6 13/18 14/20 45/2
45/4 50/19 50/22 51/1
underwritten [1] 27/6
underwrote [1] 26/15
unfortunately [1] 33/11
UNITED [4] 1/1 3/2 55/6 55/10
unless [1] 27/22
unlike [1] 13/14
unnecessary [1] 49/16
unreasonable [2] 31/13 45/24
unresolved [2] 8/16 10/4
until [5] 13/2 35/19 44/25 45/1 52/17
up [7] 11/1 16/6 28/2 34/9 35/15 47/18
52/16
upon [1] 33/16
URQUHART [2] 2/4 2/8
us [33] 8/8 12/2 17/14 18/1 18/2 18/4
18/4 18/5 18/6 20/1 22/11 22/16 23/3
23/3 23/14 24/21 27/18 28/14 28/16
28/22 30/24 38/8 41/5 41/6 41/8 41/14
41/17 44/10 45/24 46/6 50/4 50/9 52/25
use [4] 8/23 8/24 9/12 9/17
used [1] 36/4
useful [1] 38/19

**V**

valid [1] 25/4
variances [1] 9/24
various [7] 9/5 9/14 11/10 11/12 31/25
31/25 35/2
varying [1] 21/13
version [1] 10/5
versus [2] 8/24 9/25
very [25] 8/14 11/20 13/10 13/10 22/15
24/2 24/5 26/17 32/17 33/22 34/6 34/6
37/14 37/17 39/8 39/21 44/6 45/4 46/4
51/16 51/17 52/5 52/14 53/4 54/4
view [1] 26/11
vigorously [2] 46/25 49/10
vis [2] 8/20 8/20
vis-a-vis [1] 8/20
volume [1] 28/16
volumes [1] 19/7

**W**

want [53] 14/15 14/23 15/21 16/16 17/10
17/10 18/1 18/2 24/14 25/14 27/18 27/19
27/22 29/20 30/10 31/3 31/12 31/12 32/1
32/2 33/3 33/5 33/17 33/24 34/13 35/4
35/17 35/18 35/20 36/13 38/21 39/7 40/3
40/10 41/17 41/24 41/25 43/3 46/21 47/6
50/21 51/3 51/13 51/17 52/4 52/15 52/20
53/6 53/9 53/10 53/12 53/13 53/14
wanted [3] 15/3 49/15 50/17
wants [1] 42/7
was [29] 8/22 9/11 10/4 13/23 13/25
14/24 15/24 21/9 21/10 21/12 21/17 24/3
24/4 25/20 28/8 31/21 31/22 32/15 33/4

33/14 34/14 37/21 44/20 47/2 48/16 49/8
51/15 54/3 54/7
wasn't [1] 42/20
way [12] 10/2 12/14 14/11 21/9 22/10
22/11 24/10 33/11 33/12 34/12 40/1 40/2
ways [2] 33/13 35/2
we [225]
we'd [3] 28/2 31/3 41/20
we're [2] 21/3 33/11
we've [13] 8/18 9/23 10/5 10/15 17/2 20/8
21/3 30/13 30/19 41/10 44/23 53/10
53/21
wearing [1] 31/25
Wednesday [1] 45/15
week [7] 23/14 28/23 37/25 38/9 44/22
45/12 45/16
weeks [1] 24/4
well [42] 6/21 8/19 10/10 10/24 12/8
12/12 13/9 14/5 14/10 17/7 17/15 17/18
17/22 18/17 18/17 21/25 22/7 24/8 24/25
25/13 29/3 29/18 29/24 30/5 30/7 31/7
31/16 32/25 33/21 35/10 36/10 37/2 39/4
44/13 49/17 49/19 50/10 51/14 51/19
52/14 52/24 54/11
went [4] 13/25 33/25 40/1 40/2
were [31] 11/11 13/1 14/2 17/23 21/11
21/11 22/2 22/24 26/24 29/6 29/14 31/14
32/4 34/4 34/18 39/23 40/9 40/11 40/19
47/2 47/16 48/15 48/16 49/25 51/15
51/20 51/22 51/23 53/20 54/1 54/19
weren't [2] 40/9 42/17
WESTERN [2] 1/3 3/2
what [96]
what's [1] 16/4
whatever [2] 13/21 30/24
when [4] 13/23 26/14 30/21 41/25
whenever [1] 8/25
where [18] 8/16 11/2 16/13 17/2 21/16
21/18 22/4 23/4 27/11 32/3 33/24 41/7
41/22 46/22 46/23 48/18 53/11 53/24
whether [3] 39/23 46/10 47/15
which [15] 9/17 14/23 16/9 22/10 22/22
25/20 26/12 26/24 35/3 42/12 42/22
47/23 48/10 48/19 52/25
while [2] 11/25 50/18
who [10] 17/23 17/24 22/23 22/24 27/2
28/5 50/8 52/13 53/22 54/1
whole [2] 33/7 37/20
whomever [1] 51/3
why [5] 11/4 12/13 17/13 31/5 40/6
Wil [2] 1/22 55/15
Wilcox [2] 1/22 55/15
wildly [1] 50/3
Wilk [2] 5/9 8/5
will [60]
willing [1] 48/20
Wilshire [1] 2/19
WITHAM [1] 3/8
withheld [2] 44/7 52/5
within [2] 37/24 38/9
witness [2] 36/3 36/5
witnesses [7] 17/11 17/22 17/23 18/5
23/7 28/5 33/20
witnesses' [1] 27/15
won't [6] 36/9 38/3 42/22 43/12 51/25
53/15
WOOLMUTH [1] 2/22
word [1] 39/22
wording [1] 10/5
words [1] 34/11
work [10] 16/7 17/6 18/12 29/19 32/24
34/8 36/17 36/18 37/24 39/17
worked [5] 10/5 12/13 14/1 17/24 22/23
world [3] 22/14 31/10 33/7

**W**

worse [1] 47/23
worth [1] 46/20
would [47] 11/4 15/18 20/12 25/8 25/9
26/23 27/3 30/1 30/2 30/11 34/10 34/18
34/22 34/22 34/24 35/25 36/21
37/4 37/13 38/8 38/23 39/22 39/25 41/6
42/8 42/11 43/2 43/11 43/17 43/20 44/2
44/13 44/25 48/4 48/7 48/19 48/21 49/4
49/9 49/10 49/11 49/20 50/14 51/6 52/24
54/9
wouldn't [6] 18/4 18/5 18/6 38/19 41/5
48/20
writing [1] 29/20
wrong [4] 33/3 42/16 48/13 50/3
wrote [1] 43/18

**Y**

Yeah [1] 44/16
year [1] 11/3
years [4] 30/22 50/23 50/23 51/2
yes [28] 9/2 9/6 9/10 11/8 11/19 13/12
15/14 15/22 18/16 18/20 19/18 20/8
24/22 31/7 32/12 32/19 33/9 38/14 39/3
39/6 39/9 39/14 40/14 41/3 43/5 46/15
54/15 54/17
yet [3] 12/21 46/19 54/7
York [12] 2/6 2/6 2/15 2/15 2/24 2/24 3/5
3/5 3/24 6/18 6/18 46/14
you [194]
you've [4] 33/6 36/11 36/16 44/10
your [127]
Your Honor [2] 10/22 36/19
yourself [1] 38/20

**Z**

zero [3] 16/23 16/23 16/24